312 Ga. 626
FINAL COPY

S21Y1269. IN THE MATTER OF LEONARD T. MATHIS.

PER CURIAM.

This disciplinary matter is before this Court on the petition for voluntary discipline filed by Leonard T. Mathis (State Bar No. 976925) prior to the issuance of a formal complaint pursuant to Bar Rule 4-227 (b). In his petition, Mathis, who has been a member of the Bar since 2014, admits that, by his conduct in failing to ensure that his trust account was properly maintained, he has violated Rules 1.15 (I) (a) and 1.15 (II) (b) of the Georgia Rules of Professional Conduct, found in Bar Rule 4-102 (d), and he requests that, as a sanction for his admitted violations of the Rules, he receive either a State Disciplinary Review Board reprimand or a public reprimand. See Bar Rule 4-102 (b) (3), (4). The State Bar has filed a response, in which it suggests that this Court should accept Mathis's petition and impose a public reprimand.

In his petition, Mathis recounts that, in April 2020, he settled, with his client's authorization, a personal injury matter for $125,000 and shortly thereafter received a check for the settlement funds and deposited those funds into his trust account. Approximately one month later, Mathis issued a check to the client for approximately $47,000, which was the client's share of the settlement proceeds. Unbeknownst to Mathis, the client did not promptly negotiate the check, instead waiting approximately four months to do so. However, on the date on which the client did seek to negotiate the check, Mathis's trust account contained only $18,000, which resulted in the automatic generation by the bank of a notice of insufficient funds, which was directed to the State Bar.[1] Mathis became aware of the shortfall that evening, contacted the client the next morning to alert him to the situation, and made deposits from both his operating account and personal checking account to restore

---

[1] Mathis acknowledges that, in the period between when the check was issued and when the client attempted to negotiate the check, the ending daily balance in his trust account was "on several occasions" insufficient to pay the issued check and was as low as $12,825.90.

the balance of the trust account to $65,956. Mathis then presented the client with a new check, which, in addition to the settlement funds owed to the client, included an additional $100 to defray any costs incurred by the client. Mathis notes that the client was then able to negotiate the check without incident and that the client did not initiate the grievance in this matter. Mathis further notes that, when contacted by the Bar regarding the insufficient funds matter, he was forthright and cooperative, explaining the facts as he understood them and providing copies of relevant documents.

Mathis further recounts that, during the times in question, he had retained a CPA, whose duties included bookkeeping, monthly reconciliation of the trust account, and preparation of quarterly income statements for estimated tax filings. Mathis asserts that he believed in good faith that the CPA would keep him apprised of the status of the trust account, because the CPA's responsibilities included maintaining a ledger of each client's account and alerting Mathis to any discrepancies, such as outstanding checks drawn on the trust account. Mathis asserts that, "[d]ue in part to misplaced

3

reliance on his CPA," on numerous occasions during the period at issue, he withdrew earned fees from his trust account without referencing a ledger detailing the amount of earned fees attributed to each client. Mathis also states that, on several occasions during that period, he transferred funds from his operating and personal accounts, and that many of these transfers were in response to his realization that the trust account did not contain funds sufficient to pay checks that were then outstanding.[2] Mathis acknowledges that the facts here reflect his own misunderstanding of proper trust account management, and he asserts that his references to his misplaced reliance on his now-former CPA are not intended to deflect responsibility for these failures onto the CPA, but are rather intended merely to demonstrate that these failures resulted from his being misinformed, rather than from any knowing and willful actions on his part.

---

[2] The remaining transfers were apparently made to correct erroneous transfers made to his operating and personal accounts, the circumstances of which Mathis does not explain.

4

Mathis acknowledges, as noted above, that his actions violated Rules 1.15 (I) (a) and 1.15 (II) (b). Mathis notes that, although his actions posed a potential threat of harm to the client, and although the client was unable to negotiate the initially tendered check for four days, the client did not file a grievance as to this matter and has not alleged that any actual injury occurred. As to the appropriate level of discipline, Mathis cites no factors in aggravation and cites in mitigation that he has no prior disciplinary record; that his actions do not demonstrate a selfish or dishonest motive; that he accepts responsibility for his reliance on his CPA and for managing his trust account without a proper understanding of bookkeeping and account procedures; that he quickly moved to remedy any potential harm caused by his conduct, by making corrective deposits to his trust account and by tendering a new check to the client, which included an additional $100 to cover any costs incurred by the client as a result of the insufficient funds issue; that he has implemented additional controls to ensure compliance with the standards applicable to the maintenance of a trust account, including by

retaining a third-party reconciliation company, which is providing monthly three-way reconciliation of the trust account and monitoring his bookkeeping and accounting practices, by completing a 9.5-hour course on bookkeeping and trust compliance, and by overhauling his bookkeeping and accounting practices; that he has cooperated fully with the State Bar throughout these disciplinary proceedings and demonstrated good faith and a willingness to accept discipline by the filing of this petition; that he is inexperienced in the practice of law, having only been practicing for seven years, including only three years as a solo practitioner, which, together with the good fortune of a growing practice, resulted in the burden of bookkeeping and accounting growing before he could implement appropriate measures to monitor those issues; that his character and reputation in the community are "stellar," as attested to by the several letters of recommendation attached to the petition; and that he is deeply remorseful and embarrassed about this incident and is eager to demonstrate that he accepts responsibility. Mathis suggests

6

that the appropriate discipline in this matter would be either a State Disciplinary Review Board reprimand or a public reprimand.

The Bar has responded to Mathis's petition, recommending that it be accepted by this Court and that this Court impose as a sanction a public reprimand. In its response, the Bar reiterates the facts laid out by Mathis, adding that its review of this matter revealed that Mathis made numerous "round number" transfers from his trust account to his operating account that did not directly correspond to his fees and expenses in personal injury matters. As to the admitted Rules violations, the Bar states that Mathis violated Rule 1.15 (I) (a)[3] by failing to segregate client funds from his own, by withdrawing fees from the trust account without referencing applicable records, by failing to keep the client's funds in his trust account, and by failing to hold the client's funds in the manner

---

[3] Rule 1.15 (I) (a) provides, in pertinent part, that "[a] lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property."

required of a fiduciary. As to Rule 1.15 (II) (b),[4] the Bar notes that Mathis violated it by making deposits from his operating and personal accounts to cover the shortfall in his trust account, by his record-keeping failures, and by the improper withdrawal of funds from the trust account without reference to properly kept records.

The Bar states that it does not appear that Mathis had any intention of withholding the client's funds, as this incident appears to have arisen from his mismanagement of his trust account. Although the Bar acknowledges Mathis's assertions regarding the role played by his then-CPA in leading to the incident here, it notes that Mathis's own admissions demonstrate that he was conscious of

---

[4] Rule 1.15 (II) (b) provides:

No personal funds shall ever be deposited in a lawyer's trust account, except that unearned attorney's fees may be so held until the same are earned. Sufficient personal funds of the lawyer may be kept in the trust account to cover maintenance fees such as service charges on the account. Records on such trust accounts shall be so kept and maintained as to reflect at all times the exact balance held for each client or third person. No funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such.

the existence of ongoing shortfalls in the trust account, which he remedied by depositing his own personal and business funds to make up for the deficiencies. Nevertheless, the Bar acknowledges that Mathis's failings here may have been due to inexperience and ignorance, rather than an intention to improperly convert client funds. As to the question of client injury, the Bar notes that Mathis acknowledged at least some minimal injury to the client in the client's not having been able to negotiate the settlement check at the time of his choosing, and that his mismanagement of his trust account posed a general risk of potential injury to his clients. The Bar asserts that it is "somewhat material" that no client has claimed an actual injury, but it states that such is neither a mitigating nor aggravating factor, citing Standard 9.4 (f) of the American Bar Association's Standards for Imposing Lawyer Sanctions.

Moving to aggravating and mitigating factors, the Bar identifies no aggravating factors.[5] As to mitigation, the Bar does not

_____

[5] However, the Bar does note that, although its investigation "potentially revealed multiple offenses and a pattern of misconduct — the admittedly

9

contest Mathis's assertions regarding the applicable mitigating factors. In arguing for the proposed sanction here, the Bar points to Mathis's cooperation and contrition, noting that he immediately sought to remediate the matter with the client, admitted his misconduct, and filed this petition. The Bar further argues that Mathis's lack of experience and his lack of a dishonest or selfish motive should mitigate in his favor. The Bar points to Mathis's misplaced reliance on his CPA as the source of much of his trouble, although it also acknowledges that Mathis was the one making transfers between his various accounts, with apparently little diligence exercised as to the propriety of those transfers. The Bar asserts that Mathis "did not appear to have been aware that he was repeatedly violating the trust accounting rules until he was 'caught'" doing so, and maintains that his practice of transferring money back and forth between his trust and operating accounts appears to have

---

improper transfers back and forth between IOLTA and operating accounts over *all* of the seven months under review — pursuant to negotiations with [Mathis]'s counsel[,] the State Bar refrains from arguing these as factors in aggravation in response to his Petition." (Citations omitted; emphasis in original.)

10

been intended simply to remedy his bookkeeping failures and does not evince an intent to engage in misconduct.

Having reviewed the record, we agree that the imposition of a public reprimand is the appropriate sanction in this matter. See *In the Matter of Cook*, 311 Ga. 206 (857 SE2d 212) (2021) (imposing public reprimand for acknowledged violations of trust account rules where attorney did not act dishonestly, intentionally, or maliciously; where attorney lacked a prior disciplinary history; and where no client was harmed). See also *In the Matter of Howard*, 292 Ga. 413 (738 SE2d 89) (2013) (imposing public reprimand where attorney admitted violations of trust account rules). Accordingly, we accept this petition for voluntary discipline and direct that Leonard T. Mathis receive a public reprimand in accordance with Bar Rules 4-102 (b) (3) and 4-220 (c).

*Petition for voluntary discipline accepted. Public reprimand. All the Justices concur.*

Decided October 5, 2021.

Public reprimand.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, James S. Lewis, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Chandler Law, Douglas V. Chandler, Richard F. Waddington*, for Mathis.