NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 22, 2022

S22Y0206. IN THE MATTER OF EDWARD HINE, JR.

PER CURIAM.

This disciplinary matter is before this Court on the petition for voluntary discipline filed by Edward Hine, Jr. (State Bar No. 355775), prior to the issuance of a formal complaint, pursuant to Bar Rule 4-227 (b). In his petition, Hine, who has been a member of the Bar since 1976, admits that, by his conduct in failing to adequately communicate with his clients and in mishandling client funds, he has violated Rules 1.4 (requiring a lawyer to keep a client informed of matters requiring the client's informed consent and to consult with the client), 1.8 (a) (providing that a lawyer shall not enter into a business transaction with a client if the client expects the lawyer to exercise his professional judgment for the protection of the client, and that a lawyer shall not knowingly acquire an interest adverse

to the client unless certain conditions are met) and (b) (providing that a lawyer shall not use information gained in the professional relationship to disadvantage of a client), 1.15 (I) (a) (requiring a lawyer to keep client funds separate from the lawyer's own funds), and 1.15 (II) (b) (providing that a lawyer's personal funds should not be deposited in his trust account and that trust account funds, except for earned attorney fees, not be withdrawn for the lawyer's personal use) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d). The maximum sanction for a violation of Rules 1.4 and 1.8 (a) is a public reprimand, while the maximum sanction for a violation of Rules 1.8 (b), 1.15 (I) (a), and 1.15 (II) (b) is disbarment. Hine requests that he receive a six-month suspension as a sanction for his admitted violations of the rules. The State Bar has filed a response, in which it states that it "might" be appropriate for this Court to accept Hine's petition and impose a six-month suspension. For the reasons discussed below, we reject Hine's petition for voluntary discipline.

Hine begins his recitation of the underlying facts by recounting that his wife passed away in May 2021 after a 17-month battle with cancer, that he has transferred all of his clients save one to other counsel, that his one remaining client was in the process of selling off all of its assets, and that he intends to convert his Bar status to inactive once that sale has closed. Hine then states that, in November 2018, he was appointed as executor of a client's estate; he deposited the estate funds into his trust account, paid the estate's expenses, and made distributions from those funds to the estate's beneficiaries. Hine asserts that the will underlying the estate authorized him, in his role as executor, to make loans from the estate funds, and he acknowledges that he advanced funds from the estate to his operating account without the consent of the estate's beneficiaries. Hine states that he repaid these advances in February 2020. In March 2021, Hine noticed that an item pending against his trust account would overdraw that account, so he made a deposit to his trust account before the pending item presented, such that there was no overdraft, and he self-reported the matter to the Bar,

3

attributing the issue to his failure to debit a distribution to the estate's beneficiaries against a deposit he made of personal funds to his trust account. In response to a query from the Bar, Hine investigated the matter, concluding that he was guilty of the aforementioned violations of the Rules, and made full disclosures to the Bar and to the beneficiaries, who he asserts have accepted his accounting and make no claim against him.

Hine acknowledges that he violated Rule 1.4 and Rule 1.8 (a) and (b) by failing to communicate with, and to seek the approval of, the estate's beneficiaries before advancing funds to his operating account and that he violated Rule 1.15 (1) (a) and Rule 1.15 (II) (b) by depositing estate funds into his operating account. Hine asserts that a suspension would be the appropriate penalty in this matter, given that he repaid the misappropriated funds in full, that he made an accounting to the estate beneficiaries, and that he self-reported the matter to the State Bar. Hine acknowledges that he acted knowingly in failing to obtain consent from the beneficiaries prior to advancing funds to his operating account from the estate and that,

although no actual client harm occurred, his actions had the potential to cause harm to his clients and the legal system.

As to factors in aggravation of discipline, Hine states that, because of his considerable experience as an attorney, he was "very clearly someone who knew better than to act in such a reckless and improper manner." As to factors in mitigation, Hine asserts that he does not have a prior disciplinary history in his 45 years of practice; that he made a timely, good-faith effort to disclose his misconduct to the affected clients and the Bar and sought to rectify the consequences of his misconduct; that he has demonstrated a cooperative attitude in bringing this matter to the attention of the Bar and in submitting this petition prior to the commencement of proceedings by the Bar; and that he has otherwise exhibited good character, integrity, and a positive reputation in the community, as evidenced by letters of reference. Based on the foregoing, Hine requests the imposition of a six-month suspension.

The Bar filed a timely response to this petition, in which it provides additional facts regarding the estate matter, recounting

that, during his administration of the estate, Hine transferred $129,071.50 in funds that had been entrusted to him to his operating account, despite the fact that, as of that time, the fees and expenses that Hine had charged to the estate totaled only $59,363.50. Hine explained in a letter to the beneficiaries that the $69,608 difference between the earned and allocated funds had been a loan, although the beneficiaries had been unaware of the existence of any such loan. Hine further explained to the beneficiaries that he had repaid $68,951.50 to the estate from his personal funds before making a distribution to the beneficiaries. These distributions apparently resulted in an overdraft of Hine's trust account in the amount of $3,344.31, which Hine covered with personal funds. The overdraft was reported to the Bar, with Hine explaining that he

> had a credit balance of $85,000 in [his] ledger account in trust, [so he] planned to debit [his] trust account credit balance to cover the [estate] deficit. However, [he] failed to actually debit [his] personal trust account with the [estate] deficit, and on the trust account ledger, [his] account remained at $85,000 instead of the correct balance of $82,658.69 after debiting the [estate] deficit against [his] credit balance.

6

The Bar further recounts that Hine informed the estate's beneficiaries that, although the will authorized him to charge an hourly fee, the earned fees to which he was entitled totaled $43,526.00, as opposed to the $59,363.50 he had collected in fees from the estate; Hine did apparently refund the $15,837.50 fee overcharge to the beneficiaries.

In addition to providing additional details concerning the estate matter, the Bar's response contains a recitation of facts related to Hine's handling of a trust involving a different client, which Hine did not mention in his petition. The Bar recounts that Hine was the sole trustee of a trust established by a client, who died in October 2003, with a remainder interest to be distributed for the benefit of a college after the death of the client's wife, who passed in September 2018. In January 2011, Hine executed a promissory note to the client trust in exchange for an $85,000 loan from the trust to Hine, with an apparent maturity date on the note of December 31, 2011. Hine remained the trustee of the client trust and the obligor on the note during the events described above concerning the estate,

7

and Hine maintained to the Bar that the client's wife was aware of the $85,000 loan and permitted him to defer repayment of the loan, although the Bar notes that Hine has not provided written documentation to that effect. Upon the client's wife's passing, Hine paid the balance of the proceeds of the client trust to the college, but he did not pay the $85,000 plus interest that he owed pursuant to the note until apparently prompted to do so as a result of the Bar's investigation, at which point he paid the $154,489.93 owed (principal plus interest) to a foundation associated with the college, to which the college had apparently assigned its interest in the bequest.

The Bar agrees that Hine's conduct violated Rule 1.4 by failing to keep his client informed and to consult with his client, that he violated Rule 1.8 because there was no evidence that he had ever obtained informed consent from any of the interested parties prior to borrowing money from the sums entrusted to his care, that he violated Rule 1.15 (I) (a) by commingling funds over which he had a fiduciary duty and converting them for his own use, and that he

8

violated Rule 1.15 (II) (b) by withdrawing funds belonging to the estate for his personal use without first properly debiting the funds to the estate's account and by having to deposit significant personal funds into his trust account to make up shortfalls in the account.

The Bar then assesses Hine's conduct in the context of the ABA Standards for Imposing Lawyer Sanctions. See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996) (stating that this Court looks to the ABA Standards for guidance in determining the appropriate disciplinary sanction). The Bar begins with Standard 4.1, which concerns the failure to preserve client property and as to which the Bar notes that Hine's conversion of client funds for his own use violated his duties to preserve client funds in a manner that kept them segregated from his own, presumptively calling for disbarment or suspension, subject to considerations such as Hine's mental state and any actual or potential injuries caused. As to Standard 4.3, which concerns the failure to avoid conflicts of interest, the Bar states that Hine's advances of client funds to himself without the informed consent of impacted parties had the

9

intent to benefit Hine and the potential for serious injury to clients or third-party beneficiaries, such that the presumptive penalty for Hine's Rule 1.8 violation would be disbarment. The Bar next addresses Hine's conduct under ABA Standard 4.4, which concerns a lack of diligence, noting that disbarment is generally appropriate where a lawyer knowingly deceives a client with the intent to benefit himself where there is serious injury or potential injury to the client. The Bar further notes that, although Hine admitted a lack of candor that violated the duties associated with Standard 4.6, he did not admit to a violation of Rules 1.5 or 8.4 (a) (4), which are the only rules to which Standard 4.6 applies, see Appendix 1, Cross-Reference Table: ABA Model Rules of Professional Conduct and Standards for Imposing Sanctions, although the Bar allows that Hine's reference to Standard 4.6 underscores the seriousness of his Rule 1.4 violation. The Bar points to Hine's admission that he acted knowingly in failing to obtain the informed consent of the affected parties, notes the considerable potential for injury to the affected parties, and concludes that the presumptive penalty would be

10

disbarment or a lengthy suspension. The Bar agrees with the factors in aggravation[1] and mitigation noted by Hine and adds that the illness and death of his wife provides some additional mitigation, although it notes that Hine's misconduct and his wife's illness do not necessarily appear to have been contemporaneous.

The Bar asserts that, in light of the facts that Hine converted for his own use substantial funds that had been entrusted to him as a fiduciary and that he did not acknowledge to the affected parties that he owed to them almost $240,000,[2] disbarment is the presumptively appropriate penalty. However, the Bar states that this Court has "softened its approach" in cases in which the mitigating factors substantially outweigh the factors in aggravation. The Bar acknowledges that the mitigating factors here appear to outweigh the factors in aggravation and states that it is also

---

[1] The Bar additionally specifies that it is refraining from arguing any additional factors in aggravation, pursuant to negotiations between the Bar and Hine's counsel in this matter.

[2] This amount consists of the "loan" from the estate, the fee overcharge to the estate, and the principal plus interest owed on the loan from the client trust.

11

relevant that Hine happened to be able to repay all of the amounts owed to the various affected parties. The Bar points to the recent decision of this Court in *In the Matter of Mathis*, 312 Ga. 626 (864 SE2d 40) (2021), and asserts that Hine's cooperation and contrition are substantially mitigating, as he remediated the effects of his misconduct as to the affected parties,[3] effectively closed his practice and announced his retirement, and filed this petition prior to the instigation of other proceedings. The Bar maintains that this Court should "uphold" Hine's acceptance of the consequences of his misconduct, as opposed to other, unidentified attorneys who only make restitution or seek to "cut a deal" when all other avenues are exhausted. As such, the Bar agrees that this Court "might appropriately order" a six-month suspension as punishment for Hine's acknowledged misconduct.

---

[3] Although it appears that Hine did repay the "loan" from the estate prior to the Bar becoming aware of his misconduct, he does not appear to have sought to remediate the fee overcharge to the estate or his conduct regarding the client trust until after the Bar became involved.

12

In addition to its recitation of the underlying facts and its analysis of the potentially appropriate sanction, the Bar's response has attached certain documents related to its investigation. Although not mentioned by either Hine or the Bar, among these documents is a letter from Hine to an individual at the Bar, in which Hine provided some explanation regarding his misconduct and to which he attached a number of documents. In the course of his explanation, Hine states, as to the client trust matter that he failed to mention in his petition, that

> [a]lthough I did not consider it at the time the note [to the client trust] was funded, I acknowledge that the loan and my failure to timely repay it was a breach of my fiduciary obligations to the [] Trust and is a separate ground for disbarment to which I have no defense.

It is unclear, in the light of this record evidence, why Hine apparently did not believe that he needed to address the client trust matter at all in his petition for voluntary discipline or why the Bar did not mention this admission in its response or apparently view the client trust matter as a separate basis for discipline.

13

Furthermore, it is noteworthy that Hine's treatment of the estate matter contains no mention of the fact that he overcharged the estate's beneficiaries by more than $15,000 in fees. He appears to have refunded the overcharged fees to the beneficiaries, but, from a letter to the beneficiaries that Hine attached to his aforementioned letter to the Bar, it appears that Hine did not even realize his error in calculating his fee, in a manner inconsistent with the will, let alone seek to remediate it, until after he reported his misconduct in the handling of the estate funds to the Bar. Additionally, Hine appears to have failed to mention the overcharging in his communications with the Bar, and it appears to have become known to the Bar only because of the inclusion of that issue in the letter to the beneficiaries, which Hine provided to the Bar in order to explain his mishandling of the estate funds in the matter of the "loan" from the estate.

Having reviewed the record, we conclude that acceptance of this petition would not be appropriate. Taking into account no more than the conduct to which Hine has admitted, that conduct

represents a serious violation of the Rules of Professional Conduct and could by itself warrant disbarment in the absence of substantial mitigating evidence. See, e.g., *In the Matter of Harris*, 301 Ga. 378 (801 SE2d 39) (2017) (disbarring attorney for violating Rules 1.15 (I) and 1.15 (II), where attorney misappropriated trust funds and commingled those funds with his own and offered no explanation for his conduct and no mitigation beyond the lack of a prior disciplinary history). Moreover, in addition to the conduct to which Hine has admitted in his petition, the contents of the Bar's response and the documents attached thereto raise the further question of whether Hine's conduct in overcharging the estate and in regards to his handling of the client trust matter might serve as the basis for additional sanctionable violations of the Rules of Professional Conduct. Hine's failure to mention the estate fee overcharge or client trust matter at all appears to call into question the validity of the assertion, made by both Hine and the Bar, that his supposed willingness to disclose his misconduct and accept its consequences is significantly mitigating. It is also unclear from the Bar's response

whether it was suggesting that the recommended discipline was based on the estate matter alone or whether it was also taking into account the client trust matter and the billing overcharge. Any future attempts to resolve Hine's disciplinary matter should address this additional conduct and the question of whether it provides any basis for discipline, and, if so, at what level of sanction. For these reasons, we reject Hine's petition for voluntary discipline.

*Petition for voluntary discipline rejected. All the Justices concur.*