**NOTICE:** This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 4, 2022

S23Y0100. IN THE MATTER OF EDWARD HINE, JR.

PER CURIAM.

This disciplinary matter is before the Court on the petition for voluntary surrender of license, which Respondent Edward Hine, Jr. (State Bar No. 355775) filed before the issuance of a formal complaint, see Bar Rule 4-227 (b), but after this Court rejected his earlier petition for voluntary discipline. See *In the Matter of Hine*, 314 Ga. 70 (__ SE2d __) (June 22, 2022) (*"Hine I"*). In this petition, Hine admits that, in connection with two client matters, he violated Rules 1.4, 1.8 (a), 1.15 (I) (a), and 1.15 (II) (b) of the Georgia Rules of Professional Conduct, found in Bar Rule 4-102 (d);[1] the maximum

---

[1] Rule 1.4 (a) (1) requires that a lawyer "promptly inform the client of any decision or circumstance with respect to which the client's informed consent [] is required."

sanction for a violation of Rules 1.4 and 1.8 (a) is a public reprimand, while the maximum sanction for a violation of Rules 1.15 (I) (a) and 1.15 (II) (b) is disbarment. Although Hine sets out some factors in mitigation of discipline, he acknowledges that the seriousness of his misconduct justifies the surrender of his license. The State Bar has

---

Rule 1.8 (a) provides that "[a] lawyer shall neither enter into a business transaction with a client if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, nor shall the lawyer knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction."

Rule 1.15 (I) (a) provides, in relevant part, that "[a] lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property."

Rule 1.15 (II) (b) provides, in relevant part, that "[n]o personal funds shall ever be deposited in a lawyer's trust account, except that unearned attorney's fees may be so held until the same are earned. . . . No funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such."

responded, raising no objection to Hine's petition, and we agree to accept it.

As in *Hine I*, Hine admits that, in November 2018, he was appointed as the executor of a client's estate; that he deposited the estate's funds into his trust account; and that he used those funds to pay the estate's expenses and to make distributions to the estate's beneficiaries. Hine further admits that, without the consent of the estate's beneficiaries, he transferred $129,071.50 from the funds that had been entrusted to him to his operating account, despite the fact that, as of that time, the fees and expenses that Hine had charged to the estate totaled only $59,363.50, and that he considered the difference between the earned fees and allocated funds to be a loan.[2] Hine asserts that he intended to repay the loan before making the final distributions to the estate's beneficiaries, but that he failed to repay the entire amount of the loan such that the final distribution to the beneficiaries in 2020, caused an overdraft of

---

[2] Hine asserted in this regard that the will underlying the estate authorized him, in his role as executor, to make loans from the estate funds.

3

$3,344.31 in his trust account—an overdraft that he covered with personal funds. Subsequently, Hine reported the matter to the State Bar and sent a letter explaining the situation to the estate's beneficiaries.

Although not admitted in *Hine I,* Hine now admits that in that letter, he not only explained the situation described above, but also explained to the beneficiaries that the will underlying the estate authorized him to charge an hourly fee; that under the will's terms, the total amount of earned fees to which he was entitled was $43,526.00; that he had nevertheless collected $59,363.50 in fees from the estate; and that he was, therefore, refunding the $15,837.50 fee overcharge to the beneficiaries. He asserts that he fully disclosed both of these instances of misconduct related to the estate to the Bar and that the beneficiaries of the estate have made no claim against him.

With regard to a separate trust matter, which also was not admitted in *Hine I*, Hine now admits that he was the sole trustee of a trust established by a client who died in October 2003 and that the

4

trust provided that the remainder interest was to be distributed for the benefit of a college after the death of the client's wife. Hine admits that, in January 2011, he executed a promissory note to the trust in exchange for an $85,000 loan from the trust to Hine, with an apparent maturity date on the note of December 31, 2011. Although he claims that the client's wife was aware of the loan and repeatedly permitted him to defer repayment of the loan, the wife passed away in September 2018 and Hine has presented no documentation proving either of those facts. Regardless, Hine admits that he remained the trustee of the trust and the obligor on the note for years and that, upon the passing of the client's wife, he paid the balance of the proceeds of the trust to the college named as the remainder beneficiary, but did not forward to the remainder beneficiary the $85,000 plus interest that he owed the trust pursuant to the note until 2021, after he was prompted to do so as a result of the Bar's investigation into the estate matter.

As indicated at the outset, Hine admits that, by his actions, he violated Rule 1.4 in that he failed to adequately consult with his

clients as to matters; Rule 1.8 in that there was no evidence that he had ever obtained informed consent from any of the interested parties prior to borrowing money from the sums entrusted to his care; Rule 1.15 (I) (a) in that he commingled funds over which he had a fiduciary duty and converted them to his own use; and Rule 1.15 (II) (b) in that he withdrew funds belonging to the estate and trust accounts over and above attorney fees he had actually earned and never debited those funds against the accounts of the clients, eventually having to deposit significant personal funds into his trust account to make up shortfalls in the clients' accounts. Further, Hine acknowledges that under the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), to which this Court looks for guidance in deciding disciplinary cases, the intentional nature of his conduct coupled with the fact that his conduct had the potential to seriously harm his clients, calls for the presumptive punishment for his actions to be disbarment. See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996); ABA Standards 4.11, 4.31, and 4.61. He lists his substantial experience in the practice of law as a factor in

6

aggravation of discipline, but also asserts, in mitigation, that he has no prior disciplinary history despite 45 years in the practice of law; that he made a timely and good faith effort to rectify the consequences of his misconduct; that he has demonstrated a cooperative attitude in these disciplinary proceedings; and that he has otherwise exhibited good character, integrity and a positive reputation in the community. See ABA Standards 9.32 (a), (d), (e) (g). Nevertheless, Hine asserts that the seriousness of his misconduct justifies the surrender of his license. See *In the Matter of Bunch*, Case No. S22Y0917, 2022 Ga. LEXIS 214 (Aug. 9, 2022) (accepting voluntary surrender of license on recommendation of special master where, in two cases: lawyer deposited settlement into IOLTA account but converted funds; failed to maintain records; maintained personal funds in IOLTA account; commingled personal and client funds; and failed promptly to deliver client funds); *In the Matter of Sims*, 313 Ga. 117, 119 (868 SE2d 192) (2022) (accepting voluntary surrender of license on recommendation of Special Master where attorney committed multiple trust account violations); *In the*

7

*Matter of Flit*, 309 Ga. 440, 441 (846 SE2d 403) (2020) (accepting voluntary surrender of license on recommendation of special master where attorney failed, in two separate matters, to give accounting of settlement proceeds or deliver funds to clients). Thus, he urges the Court to accept his petition for voluntary surrender, an action that, he acknowledges, is tantamount to disbarment. The State Bar has filed a lengthy response to Hine's petition, agreeing with his recitation of the facts and arguing that the law supports the loss of Hine's law license.

We have reviewed the records and agree to accept Hine's petition for voluntary surrender of his license. Accordingly, it is ordered that the name of Edward Hine, Jr. be removed from the rolls of persons authorized to practice law in the State of Georgia. Although Hine represents that he has closed his practice, he nevertheless is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Voluntary surrender of license accepted. All the Justices concur.*