316 Ga. 30
FINAL COPY

S23Y0445. IN THE MATTER OF WILLIE GEORGE DAVIS, JR.

PER CURIAM.

This is the third appearance of this disciplinary matter before the Court, following the rejection of the petition for voluntary discipline filed by Willie George Davis, Jr. (State Bar No. 213371), after a formal complaint was filed against him. See *In the Matter of Willie George Davis, Jr.*, 311 Ga. 67 (855 SE2d 643) (2021) ("*Davis II*").[1] This matter is now before the Court on the report and recommendation of the State Disciplinary Review Board (the "Review Board") which recommends that Davis, a member of the State Bar since 1996, be disbarred based on his violations of Rules 1.7 (a) and (b), 1.15 (I) (a) and (c), 1.15 (II) (a) and (b), 3.4 (a), 3.5 (d), 8.1 (b), and 8.4 (a) (5) of the Georgia Rules of Professional Conduct

---

[1] Prior to *Davis II*, we granted the State Bar's petition for appointment of a special master. See *In the Matter of Willie George Davis, Jr.*, Case No. S19B0187 (Oct. 10, 2018) ("*Davis I*").

("GRPC") found in Bar Rule 4-102 (d), which stem from Davis's mishandling of his sister's estate and his nephew's conservatorship as well as his repeated failure to comply with orders of the Cobb County Probate Court. After considering the record and Davis's exceptions to the Review Board's report and recommendation, this Court finds that given the circumstances of this case, disbarment is appropriate.

1. *The Facts and Procedural History.*

Regarding the facts and circumstances surrounding Davis's misconduct, we have previously recounted as follows:

> In 2012, Davis drafted a will for his sister, naming himself as the executor of her estate, the guardian of his nephew, and the conservator of his nephew's funds. The will specifically excepted Davis from the requirements to post a fiduciary bond and to file inventories or annual returns with the probate court, and Davis did not obtain informed and written consent that his sister was aware of the potential conflict of interest in having him serve without bond as executor, conservator, and guardian pursuant to the will he drafted. Davis was not aware that his sister was suffering from breast cancer at the time he drafted her will, and she died shortly thereafter. The nephew was only 13 years old at the time of his mother's death and was the sole beneficiary of his mother's estate.

Davis filed a petition to admit the will to probate, and the probate court appointed him to serve without bond as executor, conservator, and guardian per the terms of the will. The nephew was named a beneficiary of his mother's life insurance policy, the proceeds of which were $157,277.48. Davis admitted that he received the funds and placed them in his IOLTA account instead of a conservator account. Moreover, although the Special Master found that Davis did eventually establish a conservator account and "transferred the funds to that account," Davis failed to maintain, and could not produce, records of the funds held in the IOLTA account. He also received the nephew's Social Security benefit checks in trust as the nephew's custodian and conservator, but he did not keep records of those funds, either.

In October 2016, the nephew reached the age of majority (18), which terminated the testamentary conservatorship by law. Thereafter, the nephew and Davis had disagreements that led to Davis cutting off the nephew's cell phone service and making no further mortgage payments on his deceased sister's home, where the nephew had been residing.

In May 2017, the nephew, through counsel, filed a petition to suspend the conservatorship and to obtain a final settlement of accounts of the estate and the conservatorship. According to the probate court, "[a]n extensive procedural odyssey ensued . . . including multiple hearings, dozens of attempts to serve [Davis], findings of contempt against [Davis], and multiple orders of [Davis's] incarceration." First, the probate court entered an order suspending Davis's letters of testamentary and issued a citation for him to appear and make an accounting of estate and conservatorship assets within 15 days. A deputy from the Fulton County Sheriff's Office then personally served Davis with the probate

court's order and citation. Davis, however, did not make any accounting or appear at the hearing because he "simply could not handle the emotion which welled up. [He] was in denial and could not address the court proceeding properly." He explained that, beginning in 2016, he experienced a series of family deaths and life changes that impacted him severely and that he failed to address right away. In 2017, during the time of these proceedings, his primary care physician prescribed him medication for depression and anxiety, but he failed to seek counseling as his physician directed him to do. He also did not notify his nephew's counsel or the probate court about his mental illness or seek any relief from the probate court's requirements on that basis.

In June 2017, the probate court issued another order directing Davis to file the accountings, and the court set the matter for another hearing. But Davis did not file the accountings or appear in court, and the probate court issued another order for Davis to appear, to present the accountings, and to show cause why he should not be held in contempt. The probate court then entered an interim judgment against Davis in the amount of $157,227.58, the amount of the life insurance proceeds for which he had not accounted, and attorney fees in the amount of $11,891. Approximately one month before that order was issued, Davis delivered a check to his nephew's attorney in the amount of $34,025.80, which was the amount that remained in the conservatorship account. But Davis still did not respond to the probate court's "requests for personal service of the court's notices and demands," which resulted in the probate court directing service by publication. Davis admitted that he was not opening correspondence from the probate court during this time due to his declining mental state, and after he failed to appear at yet another hearing, the probate court issued a

4

bench warrant for his arrest and issued an order finding him in contempt. Davis eventually turned himself in to jail in January 2018.

Following a hearing, the probate court entered a criminal contempt finding, sentencing Davis to 20 days in jail with credit for time served, and to pay a fine of $500; the probate court also entered a civil contempt finding, sentencing Davis to remain incarcerated and pay a fine of $100 per day until such time as he purged his contempt by filing accountings of the estate and conservatorship. Because Davis "had been unable to put together anything remotely [responsive] to the court's demand" while incarcerated, and because he had not been given his medication while in custody, the judge released Davis to allow him to get back on his medication, to gather the records of the conservatorship and estate, and to file the accountings in advance of a hearing in March 2018. The judge also awarded the nephew additional attorney fees. At two hearings, Davis presented some documentation of his activities and expenditures on behalf of the estate and conservatorship, as well as an inventory of the estate and its annual returns, but failed to include complete bank statements for the custodial account or any statements for an account for the estate. After considering that evidence, the probate court issued a judgment against Davis in favor of his nephew in an amount of $9,971 for breaches related to the estate and in the amount of $190,043.48 for breaches related to the conservatorship.

Following the judgment, Davis failed adequately to respond to his nephew's post-judgment requests, which caused the probate court to grant the nephew's motion to compel and request for attorney fees for having to file the motion. Davis then failed to respond to the requests within the time set forth in the order granting the motion to compel, which caused him to be held in contempt and

5

subject to additional attorney fees. Davis admitted that, including amounts due for the attorney fees judgments, but not including any statutory interest, the amount of money he still owed to his nephew was $193,174.91.

*Davis II*, 311 Ga. at 68-70 (1). The Special Master recommended that Davis be suspended from the practice of law for at least 18 months, with reinstatement conditioned upon Davis providing proof that he has satisfied the probate court judgment and that he was no longer suffering from any mental disability that would make him unfit to practice law. See id. at 75 (3) (b). But if Davis failed to meet the above conditions within 60 days after the 18-month suspension expired, the time-limited suspension would be converted automatically to an indefinite suspension under the same conditions, so that Davis's nephew could seek relief for his loss under the Client's Security Fund. See id.

The Court rejected the Special Master's recommendation, reasoning that "to impose an indefinite suspension until the reinstatement conditions are met would effectively result in Davis being suspended for approximately 50 years if he continued paying

restitution at the rate the record shows he is currently paying," and this Court does not allow suspensions of that length. *Davis II*, 311 Ga. at 75 (4). The Court also concluded that the reinstatement conditions recommended by the Special Master for Davis were "considerably less stringent than for disbarred attorneys, insofar as Davis could remain suspended for far longer than five years but — upon satisfying the conditions of his suspension — not be required to re-certify his fitness before he resumes the practice of law." Id. at 76 (4). The Court also noted that the recommended conditions seemed "more punitive to Davis" because "the large discrepancy between the amount he would be required to repay and his current rate of repayment" meant that "the recommended conditions could place Davis in a disciplinary purgatory: if he cannot finish paying restitution, his discipline will be endless." Id.

After *Davis II*, the State Bar took Davis's deposition and filed its motion for partial summary judgment, arguing that the record, including Davis's deposition and unconditional admissions in his petition for voluntary discipline, established as a matter of law that

he violated GRPC Rules 1.7 (a) and (b), 1.15 (I) (a) and (c), 1.15 (II) (a) and (b), 3.4 (a), 3.5 (d), 8.1 (b), and 8.4 (a) (5). The State Bar elected not to proceed on the claims that Davis had violated GRPC Rules 1.15 (I) (d), 8.1 (a), and 8.4 (a) (4).

After Davis failed to file a response to the motion for partial summary judgment, the Special Master granted the motion, finding that Davis had violated the above Rules by clear and convincing evidence. The nephew then filed an amicus brief in which he harshly criticized his uncle, providing details about Davis's behavior toward him while he was a minor.

After granting partial summary judgment, the Special Master issued her second report and recommendation that Davis be disbarred with reinstatement conditioned upon (1) his payment in full of the probate judgment and (2) his obtaining a certification of fitness to practice law from a licensed mental health professional. Davis filed exceptions and requested review by the Review Board. Subsequently, the State Bar filed a response.

In its report and recommendation, the Review Board adopted

the Special Master's findings of fact and conclusions of law and incorporated them by reference, concluding that the Special Master's recommendation of disbarment with conditions for reinstatement was the appropriate level of discipline.

2. *Special Master's Report and Recommendation.*

(a) *Findings of Fact and Conclusions of Law.*

In her second report and recommendation, the Special Master summarized the procedural history of the disciplinary proceeding, including that she had granted partial summary judgment as to Davis's violations of GRPC Rules 1.7 (a) and (b), 1.15 (I) (a) and (c), 1.15 (II) (a) and (b), 3.4 (a), 3.5 (d), 8.1 (b), and 8.4 (a) (5). The Special Master also adopted the facts as stated by the Court in *Davis II.*

Regarding GRPC Rules 1.7 (a) and (b),[2] the Special Master

---

[2] GRPC Rules 1.7 (a) and (b) provide:
(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).
(b) If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former client gives

9

concluded that Davis violated these rules by drafting his sister's will without first obtaining informed consent confirmed in writing that his sister was aware of a potential conflict of interest in Davis naming himself the executor of her will.

Regarding GRPC Rule 1.15 (I) (a)[3] (concerning segregation of funds and recordkeeping), the Special Master concluded Davis violated this rule by depositing his sister's life insurance proceeds into his IOLTA account, transferring the proceeds to his personal

---

informed consent, confirmed in writing, to the representation after:
> (1) consultation with the lawyer, pursuant to Rule 1.0 (c);
> (2) having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation[;] and
> (3) having been given the opportunity to consult with independent counsel.

[3] GRPC Rule 1.15 (I) (a) provides:
A lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property. Funds shall be kept in one or more separate accounts maintained in an approved institution as defined by Rule 1.15 (III) (c) (1). Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

investment account, and failing to maintain accurate records.

Regarding GRPC Rule 1.15 (I) (c),[4] the Special Master

concluded Davis violated this rule by: (1) failing to deliver the full

amount of the life insurance proceeds to his nephew and "treat[ing]

[him] abysmally and failed in his basic duties to him as a child"; and

(2) failing to provide his nephew with an accounting of the life

insurance proceeds and by admitting that an accounting was not

possible because he did not maintain records of how he used the

funds.

Regarding GRPC Rule 1.15 (II) (a),[5] the Special Master

---

[4] GRPC Rule 1.15 (I) (c) provides:
Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
[5] GRPC Rule 1.15 (II) (a) provides:
Every lawyer who practices law in Georgia, whether said lawyer practices as a sole practitioner, or as a member of a firm, association, or professional corporation, and who receives money or property on behalf of a client or in any other fiduciary capacity, shall maintain or have available one or more trust accounts as required by these rules. All funds held by a lawyer for a client and

11

concluded Davis violated this rule because, as a fiduciary, he was required to deposit his sister's life insurance proceeds into an interest-bearing trust account for the benefit of his nephew, but instead, he deposited the funds into a personal investment account and "administered" the funds from there. The Special Master further found that Davis admitted to these acts at his deposition.

Regarding GRPC Rule 1.15 (II) (b),[6] the Special Master concluded Davis violated this rule by failing to keep and maintain accurate records of expenditures made from the life insurance proceeds.

---

all funds held by a lawyer in any other fiduciary capacity shall be deposited in and administered from a trust account.

[6] GRPC Rule 1.15 (II) (b) provides:

No personal funds shall ever be deposited in a lawyer's trust account, except that unearned attorney's fees may be so held until the same are earned. Sufficient personal funds of the lawyer may be kept in the trust account to cover maintenance fees such as service charges on the account. Records on such trust accounts shall be so kept and maintained as to reflect at all times the exact balance held for each client or third person. No funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such.

Regarding GRPC Rule 3.4 (a),[7] the Special Master concluded Davis violated this rule when he unlawfully obstructed his nephew's access to evidence for nearly a year during the probate court proceedings and failed to provide an accounting of expenditures of the funds after the nephew's attorney repeatedly requested it. The Special Master also concluded that Davis violated this rule when he failed to produce an accounting of expenditures after ordered to do so by the probate court, finding that some documentation of expenditures existed when the accounting was first requested by the nephew's attorney.

Regarding GRPC Rule 3.5 (d),[8] the Special Master concluded Davis violated this rule by failing to attend the probate proceedings.

---

[7] GRPC Rule 3.4 (a) provides: "A lawyer shall not: unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

[8] GRPC Rule 3.5 (d) provides that "[a] lawyer shall not, without regard to whether the lawyer represents a client in the matter: engage in conduct intended to disrupt a tribunal."

Regarding GRPC Rule 8.1 (b),[9] the Special Master concluded Davis violated this rule by failing to provide the accounting requested by the State Bar during its investigation in the disciplinary proceeding and by failing to respond to the notice of investigation, which led to his interim suspension pursuant to Bar Rule 4-204.3 (d) in 2018.

Finally, regarding GRPC Rule 8.4 (a) (5),[10] the Special Master concluded Davis violated this rule by "violat[ing] his fiduciary duties to account for funds held in trust (i.e., the money collected by him and held in his IOLTA account), which formed the basis of the judgment against him [by] his nephew" and by failing to pay the probate court judgment.

(b) *Application of ABA Standards.*

---

[9] GRPC Rule 8.1 (b) provides in relevant part that "a lawyer . . . in connection with a disciplinary matter, shall not: fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from a[ ] . . . disciplinary authority . . . ."

[10] GRPC Rule 8.4 (a) (5) provides that it is a violation of the Rules for a lawyer to "fail to pay any final judgment or rule absolute rendered against such lawyer for money collected by him or her as a lawyer within ten days after the time appointed in the order or judgment."

The Special Master looked to the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") to determine the appropriate punishment for Davis's misconduct, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996) (ABA Standards are instructive in determining the appropriate level of discipline), and noted that in imposing a sanction for a lawyer's misconduct, a court should consider: (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. See ABA Standard 3.0.

The Special Master found that Davis violated his duties by: (1) failing to preserve his nephew's property, see ABA Standard 4.1; (2) failing to obtain informed consent regarding the conflict of interest inherent in drafting a will that allowed him to serve, without bond, as executor, conservator, and guardian, see ABA Standard 4.3; (3) failing to diligently handle his nephew's affairs entrusted to him both before and after the nephew turned 18, see ABA Standard 4.4; (4) failing to recognize his lack of competency in acting as a fiduciary

15

for his nephew, see ABA Standard 4.5; (5) misleading the nephew's attorney and the probate court in order to protect his actions from scrutiny, see ABA Standard 4.6; (6) deliberately withholding material information regarding the status of his sister's estate and the nephew's conservatorship from the probate court, see ABA Standard 6.1; and (7) violating duties owed to the probate court by unnecessarily delaying the progress of the nephew's reasonable efforts to obtain an accounting of the funds that had been entrusted to him, see ABA Standard 6.2.

Regarding Davis's mental state, the Special Master made lengthy and detailed findings. The Special Master found that Davis was affected by grief, depression, and anxiety, but that Davis never suggested he was incompetent. The Special Master accepted that Davis's clinical depression and anxiety played a role in his general avoidance of his duties. But, the Special Master concluded that Davis's mental state when he drafted his sister's will and when his sister died shortly thereafter was different than the mental state he had five years later when his nephew reached the age of majority

and the probate court became involved. Ultimately, the Special Master concluded that Davis's depression did not explain his behavior when the probate court and his nephew's attorney requested that he provide an accounting and appear in court.

The Special Master found that while Davis did not admit to stealing the money, he could not establish that he used all the money to pay the nephew's expenses. Nonetheless, Davis acknowledged he owed his nephew the amount of the probate court judgment, but stated he could not pay the judgment because the funds had been depleted.

Ultimately, the Special Master found that some of Davis's conduct was negligent, i.e., he grossly disregarded his duties as executor and conservator, but that a significant amount of Davis's conduct appeared to be knowing and intentional, with the purpose of avoiding the consequences of having misused or squandered his nephew's funds without any excuse, oversight, or recordkeeping. The Special Master noted that Davis's nephew lived alone most of the time after his mother's death and should have been protected by

17

the arrangements she made for him, but instead, Davis shunned his nephew, drained and depleted his funds, and attacked him when he inquired about the funds. The Special Master concluded that this more culpable mental state distinguished Davis's actions from cases where trust accounting problems were based on oversight failure alone, see *In the Matter of Mathis*, 312 Ga. 626 (864 SE2d 40) (2021), or oversight failure alongside serious personal and emotional problems, see *In the Matter of Cook*, 311 Ga. 206 (857 SE2d 212) (2021).

Regarding any presumptive penalty, the Special Master recited that the maximum penalty for Davis's violations of GRPC Rules 1.7 (a) and (b), 1.15 (I) (a) and (c), 1.15 (II) (a) and (b), 3.4 (a), 8.1 (b), and 8.4 (a) (5) was disbarment, and the maximum penalty for his violation of GRPC Rule 3.5 (d) was a public reprimand. Based on the application of the ABA Standards, Davis's mental state, and the ongoing injury to his nephew, the Special Master concluded that "the presumptive penalty is clearly disbarment."

Regarding the potential or actual injury caused by Davis's misconduct, the Special Master found that the nephew suffered serious, actual injury from Davis's misconduct, exemplified by the probate court judgment and Davis's failure to pay. The Special Master also found that the nephew suffered serious, actual injury as a result of Davis's withholding information and not appearing in court.

Regarding the existence of aggravating or mitigating factors, the Special Master found five aggravating factors supported by clear and convincing evidence: (1) Davis violated multiple GRPC Rules over several years, see ABA Standard 9.22 (d); (2) Davis obstructed the disciplinary proceeding by failing to respond to the State Bar's demands for information, see ABA Standard 9.22 (e); (3) Davis's nephew was a vulnerable victim because he was orphaned at age 13, see ABA Standard 9.22 (h); (4) Davis had practiced law for 26 years, see ABA Standard 9.22 (i); and (5) Davis was involved in two prior disciplinary matters in the form of an Investigative Panel

Reprimand in 2014 and a Formal Letter of Admonition in 2016, see ABA Standard 9.22 (a).

The Special Master found three mitigating factors supported by the evidence: (1) Davis had difficulty dealing with the deaths of family members, which affected his law practice and his judgment, see ABA Standard 9.32 (c); (2) Davis's partially untreated depression and anxiety played a role in his misconduct, see ABA Standard 9.32 (i); and (3) Davis's leadership positions in his children's school organizations justified a finding of his positive character and reputation insofar as Davis reported that he tutored students, volunteered as a career day speaker, served in various offices of his children's elementary school's PTA/PTSA, was chairman of the local school advisory council, vice chairman of the school governance council, president of Westlake High School PTSA, and school board chairman of Berean Christian Junior Academy, see ABA Standard 9.32 (g).

(c) *Recommendation of Discipline.*

The Special Master concluded that disbarment remained the presumptive penalty because, sympathy aside, the mitigating factors were not sufficient to offset the aggravating factors. After a review of *Davis II* and other cases "involving violations of trust accounting rules and [GRPC] Rule 8.4," the Special Master recommended that Davis be disbarred, with two reinstatement conditions. First, Davis must make full repayment of his debt to his nephew. See *In the Matter of Woodall*, 273 Ga. 412, 418 (541 SE2d 649) (2001) (disbarring attorney and requiring that "prior to submitting any petition for reinstatement, [attorney] shall make full restitution to the estate of all moneys he received in regard to his representation of the estate . . . ."); *In the Matter of Henderson*, 289 Ga. 135, 136 (710 SE2d 124) (2011) (rejecting petition for voluntary suspension because petitioner had not made full restitution to victim). Second, Davis must provide certification from a licensed mental health professional that he was fit to practice law prior to seeking reinstatement. See *In the Matter of Moore,* 305 Ga. 419, 420-421 (825 SE2d 225) (2019) (describing what is necessary to include

in mental health evaluation). Davis filed exceptions to the Special Master's report and recommendation and sought review by the Review Board.

3. *Review Board's Report and Recommendation.*

The Review Board concluded that the Special Master's factual findings were supported by the record and were not clearly erroneous or manifestly in error and adopted them. The Review Board further concluded that the Special Master's conclusions of law were correct and adopted them. The Review Board also affirmed the Special Master's grant of partial summary judgment to the State Bar. Next, the Review Board adopted the Special Master's findings with regard to the ABA Standards and the applicable aggravating and mitigating factors. The Review Board recommended that this Court adopt the Special Master's findings and disbar Davis with conditions for reinstatement.

4. *Davis's Exceptions.*

Davis has made four exceptions to the Review Board: (1) Bar

Rule 4-222[11] prohibits the State Bar from prosecuting conduct that occurred outside the four-year time limitation provided for in the rule; (2) the Special Master's recommendation of disbarment is too harsh and not suited to the facts of this case; (3) the Bar Rules do not assign "presumptive" discipline for a lawyer's conduct; and (4) the probate court judgment is the proper vehicle for making Davis's nephew whole. We conclude that these exceptions are without merit.

First, Davis drafted his sister's will in August 2012, and the State Bar filed its grievance within six years on March 12, 2018. Bar Rule 4-222 (a) contains a four-year limitation, but permits a two-year tolling period where "the offense is unknown." Here, Davis's nephew did not discover Davis's misconduct until he reached the age

---

[11] Bar Rule 4-222 (a) provides:
No proceeding under Part IV, Chapter 2, shall be brought unless a Memorandum of Grievance, a written description pursuant to Rule 4-202 (a), or a Client Assistance Program referral form has been received at the State Bar of Georgia headquarters or instituted pursuant to these Rules within four years after the commission of the act; provided, however, this limitation shall be tolled during any period of time, not to exceed two years, that the offender or the offense is unknown, the offender's whereabouts are unknown, or the offender's name is removed from the roll of those authorized to practice law in this State.

of majority and instituted probate court proceedings. Accordingly, this exception has no merit. We further note that Davis unconditionally admitted in his petition for voluntary discipline that he violated GRPC Rule 1.7 (b) by failing to obtain his sister's informed consent as to the potential conflict of interest in naming Davis as the executor in her will and to violating GRPC Rule 1.15 (I) (a) by depositing the insurance proceeds into his IOLTA account and failing to maintain accurate records.

Second, we conclude that disbarment is consistent with the ABA Standards and this Court's rulings in similar cases. Davis attempts to rely on several cases involving trust account violations for his argument that disbarment is too harsh a sanction,[12] but these

---

[12] See *Cook*, 311 Ga. at 213 (3) (a) (public reprimand appropriate for repeated violations of GRPC Rules 1.15 (I) (a) and 1.15 (II) (a) and (b)); *In the Matter of Brock*, 306 Ga. 388, 389 (830 SE2d 736) (2019) (Review Board reprimand appropriate for violations of GRPC Rules 1.15 (I) (a) and (c), 1.15 (II) (a) and (b), and 5.3 (a) and (b)); *In the Matter of Ralston*, 300 Ga. 416, 416 (794 SE2d 646) (2016) (Review Board reprimand appropriate for violation of GRPC Rules 1.8 (e) and 1.15 (II) (b)); *In the Matter of Brown*, 297 Ga. 865, 866 (778 SE2d 790) (2015) (public reprimand appropriate for violation of GRPC Rules 1.3, 1.4, 1.15 (I) (a), 1.15 (II) (a), and 1.15 (III) (b)); *In the Matter of Francis*, 297 Ga. 282, 283 (773 SE2d 280) (2015) (public reprimand appropriate for one violation of GRPC Rule 1.15 (II)).

cases are distinguishable. In several of these cases, there was no harm done to a client or third party. See *Cook*, 311 Ga. at 213 (3) (a) (concluding that no client or third party suffered any actual harm as a result of the violations); *In the Matter of Ralston*, 300 Ga. 416, 418 (794 SE2d 646) (2016) (concluding there was an absence of any apparent harm to a client or benefit to the lawyer); *In the Matter of Francis*, 297 Ga. 282, 283 (773 SE2d 280) (2015) (concluding that no clients were harmed). Additionally, in the cases where clients were harmed, there were timely, good-faith efforts to make restitution and to rectify the consequences of the misconduct. See *In the Matter of Brock*, 306 Ga. 388, 390 (830 SE2d 736) (2019); *In the Matter of Brown*, 297 Ga. 865, 867 (778 SE2d 790) (2015). Here, Davis's misconduct not only harmed his nephew, but there was no timely, good-faith effort to make restitution. Rather, Davis appeared to have stonewalled both his nephew and the probate court. Further, in all of these cases, there was either no intentional conduct by the lawyer or no dispute that the lawyer's conduct was not the result of a selfish or dishonest motive. See *Cook*, 311 Ga. at 213 (3) (a) (no evidence

25

that the lawyer acted dishonestly, intentionally, or maliciously); *Brock*, 306 Ga. at 389 (evidence showed that the lawyer failed to supervise his paralegal's use of the trust account); *Ralston*, 300 Ga. at 417 (no dispute that the lawyer did not intentionally violate GRPC Rule 1.8 (e)); *Brown*, 297 Ga. at 866 (no dispute that the lawyer's actions were not the result of a dishonest or sinister motive); *Francis*, 297 Ga. at 283 (no dispute that the lawyer's conduct was not for a selfish or dishonest motive). Here, the Special Master found that at least some of Davis's misconduct was intentional, e.g., Davis "deliberately and improperly withheld material information . . . regarding the status of [his nephew's] estate and the conservatorship from the [p]robate [c]ourt" and "[i]t took [Davis] being jailed for contempt to get [Davis] to take 'remedial action.'" "[B]ecause this Court recognizes that the special master is in the best position to determine the witnesses' credibility, it generally defers to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous." *In the Matter of Eddings*, 314

Ga. 409, 416 (877 SE2d 248) (2022). And the Special Master's findings that some of Davis's misconduct was intentional were not clearly erroneous.

Third, although Davis contends that the Special Master's "application of a presumptive penalty for violation of each of the Bar Rules [was] a clear error of law," Davis's complaint regarding the Special Master's recommendation is immaterial since, ultimately, "the level of punishment imposed rests in the sound discretion of this Court." *Cook*, 311 Ga. at 213 (3) (a).

Fourth, we conclude that, contrary to Davis's contentions, the State Bar did not "inappropriately expand[ ] its prosecution" when it alleged that Davis violated GRPC Rule 8.4 (a) (5) and the Special Master did not "erroneously appl[y]" the rule when she recommended repayment of the probate court judgment as a condition of reinstatement. See *In the Matter of Smith Fitch*, 298 Ga. 379, 380 (782 SE2d 40) (2016) (imposing a six-month suspension with conditions for reinstatement where the lawyer violated GRPC Rules 1.5 and 8.4 (a) (5) by failing to timely pay a probate court

judgment resulting from her representation in a conservatorship case); *In the Matter of Roberson*, 273 Ga. 651, 651 (544 SE2d 715) (2001) (adopting Review Panel's recommendation of disbarment with special condition of making full restitution prior to seeking reinstatement). Further, as stated above, "the level of punishment imposed rests in the sound discretion of this Court." *Cook*, 311 Ga. at 213 (3) (a). And we note that Davis unconditionally admitted in his petition for voluntary discipline that he violated GRPC Rule 8.4 (a) (5).

5. *Analysis and Conclusion.*

Based on a careful review of the evidence in the record, we agree with the Special Master that disbarment is appropriate for Davis's violation of GRPC Rules 1.7 (a) and (b), 1.15 (I) (a) and (c), 1.15 (II) (a) and (b), 3.4 (a), 3.5 (d), 8.1 (b), and 8.4 (a) (5), with reinstatement conditioned upon full payment of the probate judgment and certification from a licensed mental health professional of Davis's fitness to practice law. See *In the Matter of Harris*, 301 Ga. 378, 379 (801 SE2d 39) (2017) (disbarring attorney

28

for violating GRPC Rules 1.15 (I) and 1.15 (II) by "misappropriat[ing] trust funds and commingl[ing] those funds with his own," even though attorney deposited $12,500 of his personal funds to cure deficiencies in his trust account); *In the Matter of Anderson*, 286 Ga. 137, 141 (685 SE2d 711) (2009) (disbarring attorney for violating GRPC Rules 1.15 (I) and 1.15 (II) with reinstatement conditioned upon repayment of a judgment, making restitution, and completing the State Bar's Law Practice Management Program); *In the Matter of Byars*, 282 Ga. 630, 631 (652 SE2d 567) (2007) (disbarring attorney for violations of the trust accounting rules and GRPC Rule 8.4 (a) by depositing clients' settlement checks into trust account and converting them to his own use); *In the Matter of Oellerich*, 278 Ga. 22, 25 (596 SE2d 156) (2004) (disbarring attorney for using his client's estate as a source of funds for his close corporation, with reinstatement conditioned upon his making full restitution to the estate). Accordingly, it is hereby ordered that the name of Willie George Davis, Jr., be removed from the rolls of persons authorized to practice law in the State of

Georgia. Davis is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*

Decided March 21, 2023.

Disbarment.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, James S. Lewis, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Gene Chapman*, for Davis.