**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 7, 2023

S23Y0201.  IN THE MATTER OF L. NICOLE HAMILTON.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Quentin Marlin, who recommends that the Court accept the April 14, 2021 petition for voluntary discipline of L. Nicole Hamilton[1] (State Bar No. 320909) and impose a six-month suspension as discipline for Hamilton's failure to return unearned legal fees to a client after her discharge and her failure to pay that client's subsequent fee arbitration award in a timely manner.

This same matter was previously before the Court in late 2020. On September 20, 2020, the Special Master issued his initial report and recommendation, in which he recommended that we accept

---

[1] Hamilton was formerly known as L. Nicole Brantley and Nicole King.

Hamilton's first petition for voluntary discipline, filed in August 2016, and impose a Review Board reprimand for Hamilton's professional misconduct. See *In the Matter of Brantley*, 311 Ga. 61 (855 SE2d 625) (2021) (*Brantley II*). In *Brantley II*, we rejected the Special Master's recommendation and remanded the matter for an evidentiary hearing. See id. at 65.

On August 29, 2022, the Special Master held an evidentiary hearing and issued the report and recommendation presently before the Court. For the reasons explained below, the Court agrees that—strictly in this case—a six-month suspension from the practice of law is an acceptable sanction for Hamilton's violation of Rule 1.16 (d) of the Georgia Rules of Professional Conduct. See Bar Rule 4-102 (d).[2]

1. The underlying facts giving rise to this disciplinary matter—as recounted in *Brantley II*[3]—are as follows:

---

[2] This Court issued an order on January 12, 2018, comprehensively amending Part IV of the Rules and Regulations for the Organization and Government of the State Bar of Georgia. The former rules govern this matter because it was commenced prior to July 1, 2018.

[3] Nothing offered at the evidentiary hearing following *Brantley II* necessitates any change to our previous recounting of the circumstances giving rise to this matter.

After being retained [by a client] in October 2013 [and paid $6,000 in advance], [Hamilton] was discharged by the client, who was dissatisfied with [Hamilton's] lack of communication and failure to follow his instructions in handling his case. [Hamilton], however, never submitted a written request to withdraw, in violation of Uniform Superior Court Rule 4.3, and failed to appear at a February 2014 hearing in the case. In April 2014, after [Hamilton] had failed to return the unearned portion of her retainer, the client filed a fee arbitration petition, seeking a refund of $4,000. [Hamilton] submitted an answer, in which she agreed to be bound by the fee arbitration award, but thereafter failed to appear at the fee arbitration hearing. In March 2015, written notification of the fee award was sent to [Hamilton], with direction that the award be paid within 90 days. After the 90-day period elapsed, the client filed his grievance.

*Brantley II*, 311 Ga. at 61-62.

In April 2016, the State Bar filed a Formal Complaint against Hamilton and charged her with violating Rule 1.16 (d), which provides that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned." The State Bar observed

3

that Rule 1.16 sets "a maximum sanction for a violation as public reprimand," but noted that Hamilton "had been subject to discipline on multiple prior occasions[4] and that, accordingly, she could be subject to suspension or disbarment." *Brantley II*, 311 Ga. at 62. See also Bar Rule 4-103. The State Bar petitioned for the appointment of a Special Master in this proceeding, and this Court appointed Daniel Brent Snipes[5] as Special Master on April 19, 2016.

---

[4] These prior disciplinary matters will be addressed in more detail below.

[5] Notably, in 2011, the Court also appointed Snipes to serve as the Special Master in several, prior disciplinary matters against Hamilton, see Case Nos. S11B0774 and S11B0775 (February 8, 2011) (appointing Snipes as Special Master), which were docketed in this Court in 2014. See *In re Hamilton*, 295 Ga. 456 (761 SE2d 79) (2014) (*Hamilton I*). *Hamilton I* involved three disciplinary matters against Hamilton for conduct that occurred during 2009 and 2010. See id. at 456. Following a hearing, Snipes recommended that the Court accept Hamilton's petition for voluntary discipline and impose as discipline a public reprimand with conditions. Id. This Court disagreed with Snipes that a public reprimand was an "appropriate level of discipline for Hamilton's violations," particularly in light of Hamilton's past disciplinary history, which included two Investigative Panel reprimands in 2006 and 2010 and two letters of admonition in 2010—disciplinary matters that were unrelated to the conduct giving rise to *Hamilton I*. Id. at 457. Accordingly, the Court rejected Hamilton's petition for voluntary discipline and remanded the matter for an evidentiary hearing. Id. After remand, Snipes held an evidentiary hearing on August 10, 2015—during which he took additional evidence on two new disciplinary matters against Hamilton (then Brantley) arising from conduct that occurred between December 2010 and the end of the calendar year 2011. See *In the Matter of Brantley*, 299 Ga. 732 (791 SE2d 783) (2016) (*Brantley I*), *reinstatement granted* 301 Ga. 653 (802 SE2d 252) (June 30, 2017). Snipes then issued a new report and recommendation,

4

See Case No. S16B1278 (April 19, 2016) (appointing Snipes as Special Master).

In June 2016, Hamilton filed an unsworn answer to the State Bar's Formal Complaint. In her answer,

> [Hamilton] denied that she was terminated by the client; denied that she had failed to refund unearned fees; and claimed that she had "never received any notice of any [fee] award until this proceeding." However, in August 2016, [Hamilton] filed her petition for voluntary discipline, admitting, unconditionally, that she had been discharged by the client, had failed to refund the client's unearned fees, and, though she had agreed to be bound by the fee arbitration panel's decision, had not paid the fee arbitration award. [Hamilton] made no representations as to whether she had received notice from the fee arbitration office regarding the hearing or the subsequent fee award. She offered, as mitigation, to pay the $4,000 fee arbitration award in monthly installments of $500.

*Brantley II*, 311 Ga. at 62.

In response to Hamilton's August 2016 petition for voluntary discipline, the State Bar conceded that "the interests of the public and Bar would be best served by acceptance of the petition, but only after [Hamilton] submitted proof that she had refunded the full

recommending a 180-day suspension with conditions, which this Court accepted. See id. at 732.

5

$4,000 fee award." *Brantley II*, 311 Ga. at 62-63. Hamilton submitted proof to the State Bar that she completed the installment payments in June 2017. See id. at 63.

More than three years later, on July 22, 2020, H. Maddox Kilgore, a Coordinating Special Master with the State Bar, filed a motion in this Court, seeking to remove and replace Snipes as the Special Master in this disciplinary matter. In the motion, the Coordinating Special Master asserted that, after Snipes's appointment by this Court, Snipes was served with Hamilton's petition for voluntary discipline and the State Bar's response; however, Snipes did not respond to any emails or letters from the State Bar, which were sent to him on several occasions in 2017, 2018, and 2019. The Coordinating Special Master asserted that he had also been unsuccessful in reaching Snipes by telephone or email in 2020 and that the State Bar and Hamilton did not oppose replacing Snipes as the Special Master in this disciplinary matter. The Coordinating Special Master requested that the Court remove Snipes and appoint Marlin—the current Special Master—as

6

Snipes's replacement.

The Court entered an Order appointing Marlin as Special Master on July 22, 2020. See Case No. S16B1278 (July 22, 2020) (vacating order appointing former Special Master and appointing Marlin as new Special Master). The Special Master then issued his initial report and recommendation on September 22, 2020, recommending that we accept Hamilton's August 2016 petition for voluntary discipline and issue a Review Board reprimand.

As noted above, this Court rejected the Special Master's initial recommendation. See *Brantley II*, 311 Ga. at 65. In doing so, we acknowledged that "the maximum sanction for a violation of Rule 1.16 is a public reprimand," but we explained that we could not "view [Hamilton's] conduct here apart from the larger context in which this violation was committed"—i.e., her prior disciplinary history— and "the apparent initial lack of candor [Hamilton] displayed in this proceeding." Id. at 63. And, the Court was quite concerned that Hamilton "willfully refused, without apparent explanation, [(1)] to refund several thousand dollars in client fees[;]" (2) to acknowledge

7

the wrongful nature of her conduct; and (3) to pay the arbitration fee award in a timely manner. Id. at 64. The Court also observed that Hamilton "made no representations regarding any personal hardship that should be considered in mitigation in relation to this violation." Id.

2. Upon remand, Hamilton filed an amended petition for voluntary discipline, seeking a six-month suspension based on her violation of Rule 1.16 (d). In the amended petition, Hamilton provides greater detail regarding her failure to participate in the fee arbitration proceedings and to timely pay the award. To that end, Hamilton states that, in April 2014, she sustained a severe head injury in an automobile accident, requiring injections to control the pain and a referral to the Neurological Institute of Savannah for treatment until March 2015. In addition, Hamilton asserts that, in August 2014, she received notice of the petition for fee arbitration at her home address and filed her acknowledgment of service of the petition in September 2014. However, she claims that, in October 2014, she moved out of her home with her son because she was afraid

of her then-husband, and when she filed her answer to the fee arbitration petition in December 2014, she failed to include her new address. Hamilton admits that she did not otherwise notify the committee of her change of address, so she did not receive actual notice of the fee arbitration hearing. Hamilton admits that she failed to attend the fee arbitration hearing, and after the arbitration award was issued—the amount of which she does not dispute—she did not receive actual notice of the award by mail and thus failed to pay the award as directed.

As to her denial of the allegations in the Formal Complaint, Hamilton explains that she initially denied the allegations because she intended to claim that she and the client had a disagreement about their communications and his trial strategy, and she intended to offer a good faith claim that she had earned all (or at least a substantial portion) of the fees. Hamilton acknowledges that her simple denial of many of the Bar's allegations in the Formal Complaint was insufficient and that she should have set forth facts to support her responses. Hamilton also states that she did not

9

intend to mislead the State Bar, the Special Master, or this Court into believing that she was unaware of the existence of the fee arbitration proceedings or the possibility of an award since she was served with the petition for fee arbitration in August 2014, and she should have more precisely set forth those facts in her answer, including that, because she moved residences in October 2014, she did not receive actual notices of the hearing and the award until she received the Formal Complaint. Further, Hamilton "acknowledges that she disregarded the fee arbitration matter, but [again] explains that[,] following [her] accident in 2014 [and continuing treatment in 2015], she was suffering severe financial hardship and physical incapacity and did not expect to be able to pay any award." Hamilton states that, in time, she was able to return to work, regain some financial stability, and ultimately pay the arbitration award in full. Hamilton attached exhibits supporting these claims to her amended petition, including documentation regarding the accident, her resulting treatment, and her financial hardship.

As for prior discipline, Hamilton admits that she received

10

Investigative Panel reprimands in 2006 and 2010; that she accepted two formal letters of admonition in 2010; that she accepted a formal letter of admonition in 2014; and that she was suspended from the practice of law for a period of six months related to five disciplinary matters in 2016. Hamilton also admits—as she did in her earlier petition—that, in this case, she violated Rule 1.16 (d) when she did not promptly refund unearned fees or pay the fee arbitration award and that, while the maximum penalty for a violation of Rule 1.16 (d) is a public reprimand, she may be suspended or disbarred in this matter due to her prior misconduct. See Bar Rule 4-103.

In regard to her mental state, Hamilton asserts that the violations here were the result of negligence and not committed knowingly, and she did not intend to demonstrate a "lack of candor" in her answer to the Formal Complaint. *Brantley II*, 311 Ga. at 63. See also ABA Standard 7.3 (reprimand generally appropriate when lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system). Hamilton concedes that she

11

should have promptly issued a refund for some portion of the attorney's fees when the client terminated her representation, but states that, because she had not reached an agreement with the client as to the amount owed, the fee arbitration proceedings were an appropriate forum for that issue to be decided. And Hamilton asserts that she disregarded her obligations in that proceeding only as a result of negligence and the personal hardships she was experiencing and that, by the time she learned about the award, she was facing suspension in other disciplinary matters and was in a dire financial situation with no hope of promptly paying the award in full. Hamilton claims that she did not willfully refuse to pay the award, but argues that her mental state at the time was "exacerbated" by her accident, her lingering injuries, leaving her home, and going through a divorce. She admits that she caused actual injury to her client by failing to pay the award, but contends that she simply did not have the money to pay at the time and that her client's injuries were mitigated somewhat when she completed the payment plan and paid the entire award.

12

As to the level of discipline, Hamilton submits that the appropriate level of discipline to impose here is a six-month suspension. See *In the Matter of Polk*, 304 Ga. 326, 327 (818 SE2d 495) (2018) (accepting the attorney's second petition for voluntary discipline, filed before the filing of a Formal Complaint, and imposing a six-month suspension with conditions for reinstatement for violating Rule 1.16 (d), with a suspension to run consecutive to the suspension that the attorney was already serving in an unrelated matter, where the attorney's prior disciplinary history had all occurred within the past decade and where the attorney lacked a dishonest or selfish motive, and was remorseful, acknowledged the wrongful nature of his conduct, and was cooperative). Hamilton argues that, like Polk, she has also acknowledged the wrongful nature of her conduct and her prior disciplinary history is not too "remote" in time, primarily occurring within the "past decade". *In the Matter of Polk*, 303 Ga. 675, 677 (814 SE2d 327) (2018). Moreover, Hamilton asserts that, while Polk received numerous suspensions for his conduct—including a 30-

month suspension—Hamilton's harshest discipline to date has been a single, six-month suspension. Accordingly, she submits that a six-month suspension is appropriate in this case. See *In the Matter of Johnson*, 303 Ga. 795, 799 (815 SE2d 55) (2018) (accepting Special Master's recommendation that attorney's second petition should be accepted and imposing six-month suspension for attorney who committed multiple prior similar offenses and had substantial experience in the practice of law, but also had personal and emotional problems at time of offense); *In the Matter of Buckley*, 291 Ga. 661 (732 SE2d 87) (2012) (accepting Special Master's recommendation to accept attorney's petition and imposing four-month suspension for violation of Rules 1.3, 1.4, and 1.16 in one client matter, where there was prior disciplinary history, but mitigating factors including that attorney had provided the client a refund for unearned fee); *In the Matter of Hardwick*, 288 Ga. 60, 62 (701 SE2d 163) (2010) (accepting Special Master's recommendation that attorney's petition should be accepted and imposing a six-month suspension for violating Rules 1.3, 1.4, 3.2, and 8.4 (a) (2),

14

where attorney had personal issues at time of infraction and had paid full restitution to his clients but where he had prior disciplinary offenses and made a false statement during disciplinary process).

In the State Bar's response to Hamilton's amended petition, the State Bar agrees that Hamilton's misconduct in this case reflects a pattern of negligence and a disregard of her duties to her client and the profession—as opposed to a knowing and intentional violation of those duties—and that the appropriate level of discipline is a six-month suspension.

In the Special Master's report and recommendation presently before the Court, he agrees with Hamilton and the Bar that a six-month suspension is appropriate and recommends that this Court impose that discipline. First, the Special Master states that he is "satisfied" that Hamilton did not intend to mislead him, the Bar, or this Court. The Special Master also agrees that the violations Hamilton committed in this case occurred as a result of negligence and were not knowingly committed. The Special Master concludes that, in light of the new evidence provided by Hamilton—including

supporting documentation of her move in October 2014 and her car accident and medical treatment in 2014, among other records—she did not intend to demonstrate a lack of candor in her answer to the Formal Complaint or willfully refuse to appear at the fee arbitration hearing or to pay the award. However, he notes that Hamilton should have been more thorough and should have communicated more candidly with her former client and the Bar. Nevertheless, the Special Master concludes that Hamilton has honestly expressed her remorse that she did not do what was required by Rule 1.16 (d).

On this basis, the Special Master concludes that, although Hamilton admitted that she violated the duties she owed to her client and the profession, she did so as a result of negligence and because of a mental state that was exacerbated by personal hardships occurring during this timeframe. The Special Master further concludes that Hamilton caused actual injury to her client by failing to refund an unearned fee and then by failing to pay the fee arbitration award for a significant period of time. And, notwithstanding her claims of penury, the Special Master states

that Hamilton's conduct benefitted her at the expense of her client.

In aggravation, the Special Master considered Hamilton's prior disciplinary history, see ABA Standard 9.22 (a); her substantial experience in the practice of law, see ABA Standard 9.22 (i); and her indifference to making restitution. See ABA Standard 9.22 (j). As for mitigating factors, the Special Master considered Hamilton's personal and emotional problems, see ABA Standard 9.32 (c); her physical disability on account of the automobile accident[6], see ABA Standard 9.32 (h); her cooperation with the Bar in submitting her petitions, see ABA Standard 9.32 (e); and her remorse, see ABA Standard 9.32 (l).

Finally, as for the level of discipline, the Special Master notes that the crux of this matter is Hamilton's failure to promptly return an unearned fee, and after weighing the evidence with due consideration of the ABA Standards, the Special Master concludes that the presumptive penalty for her misconduct would be a

---

[6] The Special Master noted that Hamilton began to pay restitution and put together a proper response to the Formal Complaint after she completed treatment for her injuries.

17

reprimand or a short suspension. The Special Master also concludes that the aggravating and mitigating factors mostly offset each other, leaning if at all in the direction of aggravation given Hamilton's prior disciplinary history. And, in this regard, the Special Master points out that, while this Court gives significant weight to personal and emotional problems that actually cause a violation, see, e.g., *In the Matter of Cook*, 311 Ga. 206 (857 SE2d 212) (2021), the problems Hamilton cites occurred after her obligation to refund the unearned fee accrued; thus, the personal problems are of less importance than her significant disciplinary record. In consideration of these factors, including that this case is one of several in a pattern of neglect, see *In the Matter of Kirby*, 312 Ga. 341, 342-344 (862 SE2d 550) (2021), the Special Master agrees that a six-month suspension is appropriate in this matter. See *Polk*, 304 Ga. at 327 (concluding that "although the maximum sanction for a violation of Rule 1.16 (d) is ordinarily a public reprimand, given Polk's disciplinary history, a more severe punishment was appropriate under Bar Rule 4-103, which says that a finding of a third or subsequent disciplinary

18

infraction shall constitute discretionary grounds for suspension or disbarment. . . ").

"[B]ecause this Court recognizes that the special master is in the best position to determine the witnesses' credibility, it generally defers to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous." *In the Matter of Eddings*, 314 Ga. 409, 416 (877 SE2d 248) (2022). Deferring to the Special Master's factual findings and credibility determinations here, which are not "clearly erroneous," id., we conclude that, as to mitigation, Hamilton demonstrated on remand that, during the pertinent time period, she suffered personal hardships and emotional problems that contributed to her delay in paying the fee arbitration award and helped to explain her lack of candor in her initial response in this disciplinary proceeding. And we agree with the Special Master that these mitigating circumstances are outweighed by Hamilton's prior disciplinary record, which demonstrates a concerning pattern of misconduct over a lengthy period of Hamilton's career. See *In the*

19

*Matter of Jennings*, 305 Ga. 133, 135 (823 SE2d 811) (2019) (attorney's violations of Rules 1.3, 1.4, 1.16 (d), and 3.2 relating to his failure to return a file in a single matter "show[ed] a pattern of misconduct, [which] support[ed] the sanction of disbarment"). In fact, Hamilton's significant disciplinary history—largely involving her failure to adequately communicate with clients, her failure to appear at hearings, and her failure to return unearned fees—has been and remains of utmost concern to this Court.

Nevertheless, we observe that the resolution of this matter was significantly delayed by the first Special Master's unresponsiveness and the State Bar's oversight in allowing this case to languish for several years—through no fault of Hamilton. And it does not appear from the record that Hamilton has engaged in any professional misconduct since the circumstances giving rise to this disciplinary matter or her reinstatement to the Bar in 2017.[7]

Accordingly, based on the evidence in the record and the

---

[7] On the other hand, the record does not show that Hamilton has actually engaged in the practice of law during this time period.

particular circumstances of *this* case—where an unusual delay by the State Bar prevented the timely resolution of this matter—we agree with the Special Master that a six-month suspension is appropriate for Hamilton's single violation of Rule 1.16 (d). See *Johnson*, 303 Ga. at 799; *Hardwick*, 288 Ga. at 62. See generally *In the Matter of Kirby*, 309 Ga. 826, 831 (848 SE2d 429) (2020) (concluding that this Court's precedent "includes numerous cases in which six-month suspensions have been imposed [in cases involving Rule 1.16 violations] involving only a single client matter, where the aggravating circumstances so warranted"). To be clear, the sanction imposed here should not be relied upon as precedent for the level of discipline we would ordinarily impose in a case with such a litany of misconduct; it is only the result of the substantial delay in this case.

The suspension based on this opinion will take effect as of the date this opinion is issued and will expire by its own terms six months later. After this passage of time, there is no need for Hamilton to take any action either through the State Bar or through this Court to effectuate her return to the practice of law; however,

21

Hamilton is reminded of her duties pursuant to Bar Rule 4-219 (b).

*Six-month suspension. All the Justices concur.*