NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 13, 2024

S24Y0800.  IN THE MATTER OF JONATHAN R. MELNICK.

PER CURIAM.

This disciplinary matter is currently before the Court on the report and recommendation of the State Disciplinary Review Board (the "Review Board"), which recommends that Jonathan R. Melnick (State Bar No. 501254) be given a public reprimand and undergo a Law Practice Management Assessment based on his violations of Rules 1.3[1] and 1.4[2] of the Georgia Rules of Professional Conduct

---

[1] Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

[2] Rule 1.4 provides,
  (a) A lawyer shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0 (l), is required by these rules;
    (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

found in Bar Rule 4-102 (d). The Review Board adopted the findings of fact and conclusions of law of the Special Master, LaRae Dixon Moore, who recommended a ninety-day to six-month suspension. For the reasons discussed below, we agree with the Special Master that a six-month suspension is warranted.

## 1. *Factual Background*

The following facts were either found by the Special Master or were established without dispute at the hearing. Melnick has been a member of the State Bar since 1994. He received two Investigative Panel reprimands in 2003 and an Investigative Panel reprimand in 2006; all three matters involved violations of Rule 1.4 and two

---

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Georgia Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

involved Rule 1.3 violations.[3] In May 2017, Melnick began representing a client in a matter filed in Rockdale County by the father of the client's child. The father was paying child support via an income deduction order and was seeking a reduction in child support, as well as to legitimate the child and obtain visitation. During that time, Melnick was a solo practitioner with no full-time staff and no case management software. He handled between 50 and 80 cases at any given time and was in court 17 out of 20 days each month. He used a software program to manage his calendar and communicated with his clients primarily after typical business hours.

In March 2018, Melnick, his client, the father, and the father's attorney participated in a voluntary mediation where the parties were able to reach an agreement on a reduction in child support. However, the parties still needed to agree on visitation and prepare a parenting plan. The parties agreed that the father's reduced child

---

[3] See Bar Rule 4-208 (waiving the confidentiality of confidential discipline in the event of a subsequent disciplinary proceeding and allowing that information to be used in aggravation of discipline).

3

support payment would become effective April 1, 2018, and that if a new income deduction order was not in place by April 1, 2018, Melnick's client would reimburse the father each month for the difference between the child support amount paid pursuant to the income deduction order and the reduced amount agreed upon at the mediation.

After the mediation, the parties notified the court that they had reached a settlement and would be submitting a final order, so the court removed the case from the trial calendar. The father's attorney emailed Melnick a draft consent agreement about a month after the mediation and asked that Melnick's client begin reimbursing her client for the child support overpayment. Almost a month later, Melnick responded, "[P]lease call me." The two attorneys exchanged a few emails during May and June about a visitation schedule and the amount of the reimbursement. In early August, the father's attorney sent Melnick a revised consent agreement with a parenting plan included. A week later, Melnick responded that the parenting plan was fine but that he "was not going to agree to a refund of the

4

child support since April. [The father] can take that up with child support." The following day, a Friday, Melnick emailed the father's attorney that he believed that it would not be proper for his client to send the reimbursement to the father's attorney. The following Monday, the father's attorney filed a Motion to Enforce the Settlement Agreement (hereinafter "Motion to Enforce" or "Motion"). The Motion also sought an award of attorney fees for having to file the Motion. Melnick did not send his client a copy of the Motion or otherwise inform his client about it. He also did not file a response to the Motion because he felt it was "unnecessary." Melnick planned to handle the attorney fees issue at the hearing and believed he could prevail "pretty easily" on it.

The trial court scheduled a hearing on the Motion for January 8, 2019. Melnick did not tell his client about this hearing. Because he had a conflict for that date, he emailed a conflict letter to the judge's administrative assistant five days before the hearing was scheduled, in an attempt to comply with Uniform Superior Court

5

Rule 17.1.[4] While the judge's assistant acknowledged receipt of the conflict letter, Melnick did not follow up with the court to determine if the hearing would be rescheduled.

The court conducted the hearing on January 8.[5] After Melnick was finished with the other matters for which he was scheduled to be in court on that day, he called the court and was told the "hearings were done." He did not ask about the outcome of the hearing and did not contact his client to tell her he had not attended it. On January 15, 2019, the court issued a final order enforcing the settlement and ordering Melnick's client to reimburse, within 30 days, $2,820 to the father for child support overpayment, as well as pay $809.93 in attorney fees related to the Motion to Enforce. After the trial court issued the January 15 order, Melnick did not notify his client about the order, did not tell her she had to pay $3629.93

[4] Uniform Superior Court Rule 17.1 (B) requires that a lawyer who has a scheduling conflict provide written notice of the conflict "to opposing counsel, to the clerk of each court and to the judge before whom each action is set for hearing" and that such notice is expected to be given "such that it will be received at least seven days prior to the date of conflict."

[5] Whether it was proper for the trial court to hold a hearing in Melnick's absence in light of his conflict notice is not before us in this disciplinary matter.

within 30 days, and did not send her a copy of the order.

The client became aware of the January 15 order when, after the amount she was receiving in child support decreased, she went to the courthouse and obtained a copy of the order. That was also when she became aware of the January 8 hearing and Motion to Enforce. Melnick never filed a motion to withdraw from the case, nor did he terminate his representation. The client retained new counsel, who contacted Melnick and raised the possibility of the client filing a malpractice action against him. Melnick discussed settlement with the client's new counsel, and after the client filed a grievance with the State Bar, Melnick paid the client $3,500 and obtained a release.[6]

### 2. *Special Master's Report*

After the evidentiary hearing and consideration of the parties' briefs, the Special Master concluded that Melnick willfully violated

---

[6] The testimony established that Melnick paid his client $3,500, but the record is not clear as to whether that amount represented a refund of the fees the client paid Melnick or was generally based on the amount the client was ordered to pay by the trial court's order on the Motion to Enforce.

Rules 1.3 and 1.4 and that his conduct harmed his client. The maximum sanction for a violation of Rule 1.3 is disbarment and the maximum sanction for Rule 1.4 is a public reprimand. In addressing the appropriate level of discipline, the Special Master considered the facts and circumstances of the violations, this Court's precedent in similar disciplinary cases, mitigating and aggravating factors, and the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996). The Special Master concluded that four aggravating circumstances applied: prior disciplinary offenses, see ABA Standard 9.22 (a); a pattern of misconduct, see ABA Standard 9.22 (c); substantial experience in the practice of law, see ABA Standard 9.22 (i); and refusal to acknowledge the wrongful nature of his conduct,[7] see ABA Standard 9.22 (g).

The Special Master also determined that three mitigating

---

[7] The Special Master noted that Melnick "disappointingly" attempted to place the burden on his client for failing to reach out to him over her displeasure with the case.

factors applied. First she considered the existence of personal and emotional problems that Melnick said he suffered, see ABA Standard 9.32 (c), although she gave this factor only "some weight," noting that some of the circumstances Melnick relied upon as mitigating did not occur during the time frame in which he was representing the client and that Melnick, who had been given an opportunity to submit documents after the hearing, did not submit any documents supporting his testimony about having participated in counseling.[8] Second, Melnick made a timely good faith effort to make restitution or rectify consequences, see ABA Standard 9.32 (d), as he eventually paid his client $3,500. Finally, the Special Master recognized that Melnick had not received a disciplinary sanction since 2006, citing ABA Standard 9.32 (m) (remoteness of prior disciplinary history). The Special Master did not address Melnick's

---

[8] Melnick testified that he had marital difficulties for many years; had cared for both his parents through long-term serious illnesses; had ongoing health issues of his own; and had participated in counseling. At the conclusion of the evidentiary hearing, the Special Master invited Melnick to submit to her, with a copy to the State Bar, any documents that would support this aspect of his testimony.

argument that she consider as mitigating factors that he lacked a selfish or dishonest motive; that he was cooperative with the disciplinary authorities; that there was a delay in the proceedings that was not caused by him, given that the formal complaint was filed two years after the grievance was filed and was based on events that occurred over five years ago; and that he was remorseful. See ABA Standard 9.32 (b), (e), (j), (l).

Addressing the sanction that was warranted, the Special Master determined that a public reprimand was not appropriate, see ABA Standard 4.43 (a reprimand is appropriate for violations of rules that occurred based on negligence, rather than knowing behavior), and that Melnick's prior disciplinary history subjected him to enhanced discipline, see Bar Rule 4-103 ("A finding of a third or subsequent disciplinary infraction under these Rules shall, in and of itself, constitute discretionary grounds for suspension or disbarment."). Instead, she recommended that Melnick be suspended for a period of between ninety days and six months, consistent with prior cases such as *In the Matter of Sakas*, 301 Ga.

10

49 (799 SE2d 157) (2017) (accepting Special Master's report on petition for voluntary discipline and imposing a six-month suspension for lawyer who violated Rule 1.3 and who previously received two formal letters of admonition and public reprimand); *In the Matter of Buckley*, 291 Ga. 661 (732 SE2d 87) (2012) (accepting Special Master's report on petition for voluntary discipline and imposing a four-month suspension for lawyer who violated Rules 1.3, 1.4, and 1.16 and who previously received three confidential letters of admonition for similar conduct); *In the Matter of Hardwick*, 288 Ga. 60 (701 SE2d 163) (2010) (accepting Special Master's report on petition for voluntary discipline and imposing a six-month suspension for lawyer who violated Rules 1.3, 1.4, 3.2, and 8.4 (a) (4) and who previously received two confidential letters of admonition, including in 1994); *In the Matter of Elkins*, 284 Ga. 670 (670 SE2d 783) (2008) (accepting Special Master's report on petition for voluntary discipline and imposing a six-month suspension for lawyer who violated Rules 1.3 and 1.4 and who had prior discipline in the form of a 90-day suspension); *In the Matter of Ellison*, 280 Ga.

11

303 (627 SE2d 25) (2006) (agreeing with review panel's report and imposing a six-month suspension for attorney who violated Rules 1.3, 1.4, and 1.16 (d), who suffered from a physically disabling illness during the representation, and who previously received a formal letter of admonition and a confidential reprimand); *In the Matter of Norton,* 279 Ga. 31 (608 SE2d 614) (2005) (accepting Special Master's report and recommendation and imposing a 120-day suspension for lawyer who violated Rules 1.3 and 3.2 and who had prior discipline in the form of an indefinite suspension).

3. *Review Board's Report*

Melnick filed a motion asking the Review Board to review the Special Master's report. See Bar Rules 4-214 (d), 4-215, and 4-216. He contended that he did not violate Rule 1.3 and that, in any event, a public reprimand was more appropriate. The Review Board concluded that Melnick violated Rules 1.3 and 1.4, adopting the Special Master's factual findings and conclusions of law in all respects except with regard to the consideration of Melnick's prior disciplinary history as an aggravating factor. The Review Board

stated that it "discussed at length" the prior disciplinary history and believed that the more than 15-year period since any prior disciplinary history should not only mitigate but also should outweigh the extent that this history is considered an aggravating factor. It also disagreed with the recommended discipline,[9] and recommended that Melnick receive a public reprimand, which it concluded was consistent with prior cases such as *In the Matter of Pagano*, 298 Ga. 381 (782 SE2d 42) (2016) (accepting petition for voluntary discipline and imposing a review panel reprimand for attorney who violated Rules 1.3 and 1.4, had two prior disciplinary actions, and there was no indication that attorney took any steps to

---

[9] The Review Board stated that the case should be remanded to the Special Master for her to state "an exact and specific punishment," because it had not been able to find any past recommendation of a range of punishment by a special master in a contested disciplinary case, and because the Special Master sat "in the best position to recommend a specific sanction." However, there is no need to remand to the Special Master because no additional factfinding is necessary in this matter and this Court exercises "the ultimate discretion in disciplinary proceedings." *In the Matter of Turk*, 267 Ga. 30, 31 (471 SE2d 842) (1996). See also *In the Matter of Davis*, 316 Ga. 30, 42 (885 SE2d 771) (2023) (holding that in disciplinary matters "the level of punishment imposed rests in the sound discretion of this Court" (cleaned up)). Compare *In the Matter of Veach*, 310 Ga. 470, 472 (851 SE2d 590) (2020) (when a petition for voluntary discipline proposes a disciplinary sanction that is insufficient, our practice is to reject the petition rather than imposing a greater sanction).

ensure the client was made whole); *In the Matter of Shapiro*, 288 Ga. 455 (704 SE2d 784) (2011) (accepting petition for voluntary discipline and imposing a review panel reprimand where attorney, who was the subject of two formal complaints after having been disciplined three times within last nine preceding years, made effort to make aggrieved party whole and lack of selfish motive); *In the Matter of King*, 289 Ga. 457 (712 SE2d 70) (2011) (accepting petition for voluntary discipline and imposing a review panel reprimand where attorney admitted to violating Rules 1.3, 1.4, and 1.16, had previously received an Investigative Panel reprimand, and was remorseful and cooperative in the disciplinary proceedings). The Review Board also recommended that Melnick complete a Law Practice Management Assessment.

### 4. *The Parties' Arguments*

In its exceptions to the Review Board's Report, the State Bar asserts that the Review Board failed to adequately consider the differences in this case from the cases cited by Melnick, including that all three cases involved respondents who filed petitions for

14

voluntary discipline in which they admitted to the wrongful nature of their conduct and were cooperative in the disciplinary proceedings. See *Shapiro*, 288 Ga. at 455; *Pagano*, 298 Ga. at 381; *King*, 289 Ga. at 457. The State Bar notes that Melnick "never filed a petition for voluntary discipline" and failed to comply with discovery and the scheduling order filed in the case, which resulted in the State Bar having to file a motion to compel, and that he has continued to place the blame on his client and minimize the harm of his actions.[10] Thus, the State Bar contends that this case is more in line with *In the Matter of Hemmann*, 307 Ga. 56, 58-59 (834 SE2d 105) (2019), in which we held that "[a] short suspension would likely be a sufficient sanction to make clear to [the respondent] and other members of the Bar the importance of acting with diligence to ensure that the circumstances that led to misconduct are addressed before additional similar misconduct can occur." The State Bar also

---

[10] Melnick argued that his client did not suffer much, if any harm, given her testimony that with the assistance of a third attorney, she ultimately obtained an order in a related child support case, relieving her of the obligation to make the overpayment.

15

argues that a suspension is warranted given that this matter is Melnick's fourth disciplinary proceeding and he caused harm to his client. See Bar Rule 4-103, ABA Standards 4.42 (a) (a suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury), and 8.2 (suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession).

In his response to the State Bar's exceptions, Melnick argues, as he did before the Special Master and Review Board, that he did not violate Rule 1.3. In his view, there was no need to file a response to the Motion to Enforce because it did not seek any relief that was not already incorporated into the parties' settlement agreement other than the portion related to attorney fees. Moreover, while he acknowledges that "the better course of action" would have been to file a motion for reconsideration as to the issue of attorney fees after the Motion to Enforce was granted, he states that he does not believe

that the failure to do so constitutes willful abandonment.

In addition, Melnick argues that his prior discipline was remote in time; that by paying his client, he has "demonstrated" his remorse and that the payment should be considered as mitigating because he made it before the formal complaint was filed; and that the Court should consider in mitigation his lack of a selfish motive, his cooperation with the process, and the delay in these proceedings. He also asserts that the State Bar contends that his failure to file a petition for voluntary discipline should lead to a harsher sanction and argues that he is "not in any way trying to understate his remorse or acceptance of responsibility" but simply believes that he did not violate Rule 1.3. He contends that attorneys have received "much less serious discipline" than what has been proposed here under similar circumstances where payment has been provided to the aggrieved party and there was a lack of selfish motive. See *In the Matter of Gantt*, 305 Ga. 722, 723 (827 SE2d 683) (2019) (accepting petition for voluntary discipline and imposing review panel reprimand based on attorney's admitted violations of Rules

1.2, 1.3, 1.4, and 1.5 where there were a number of mitigating factors); *In the Matter of Moncus*, 296 Ga. 154, 155-156 (765 SE2d 358) (2014) (accepting petition for voluntary discipline and imposing a public reprimand on attorney for violating Rule 1.4; two prior disciplinary infractions, but a number of mitigating factors); *Pagano*, 298 Ga. at 381; *King*, 289 Ga. at 457; *Shapiro*, 288 Ga. at 455.

6. *Analysis and Conclusion*

"We generally defer to the special master's findings of fact (as adopted by the Review Board) so long as they are supported by the record, but we review de novo the conclusions of law reached below on what rules were violated and what level of discipline is appropriate." *In the Matter of Tuggle*, 317 Ga. 255, 258 (892 SE2d 761) (2023) (cleaned up). Likewise, while we defer to factual findings, unless clearly erroneous, regarding conduct that may constitute a mitigating or aggravating factor, whether the facts constitute an aggravating or mitigating factor is a matter we consider de novo. See, e.g., *In the Matter of Braziel*, 318 Ga. 389, 391-

392 (898 SE2d 458) (2024) (recognizing that special master's factual finding that respondent had been cooperative supports application of mitigating factor under ABA Standard 9.32 (e)); *In the Matter of Stephens*, 318 Ga. 375, 387 (898 SE2d 490) (2024) (rejecting argument that aggravating factor of "pattern of misconduct" under ABA Standard 9.22 (c) applies to "different behaviors" but not to continuation of initial misconduct).

Having reviewed the record, we agree with the Special Master and the Review Board that Melnick violated Rules 1.3 and 1.4 by his willful failure to notify his client of, or to respond to, the Motion, and his failure to notify his client of the hearing on the Motion or the entry of the order on the Motion. See, e.g., *In the Matter of Lewis*, 313 Ga. 694, 696 (872 SE2d 693) (2022); *In the Matter of Lain*, 311 Ga. 427, 428-430, 432 (857 SE2d 668) (2021); *In the Matter of Bell*, 313 Ga.615, 615-616, 618 (872 SE2d 290) (2022).

On the issue of mitigating circumstances, we agree with the Special Master and the Review Board that Melnick's personal or emotional problems are to be given some weight as a mitigating

factor[11] and that the fact that he had no disciplinary sanction for the 12 years prior to his misconduct in this case may be considered in mitigation. However, we conclude that Melnick's payment of money to his client is not a mitigating factor because he did not make any good faith effort to make restitution or rectify the consequences of his actions until after his client hired new counsel to investigate a malpractice claim and had filed a grievance with the Bar. See *In the Matter of Hunt*, 304 Ga. 635, 641 (820 SE2d 716) (2018) (repayment not considered mitigating factor where attorney replaced the funds he took only after his conversion of the funds was discovered and he had been ordered to appear before judge on the matter). Melnick asserts that this Court should consider in mitigation that he did not act with a dishonest or selfish motive, that he was cooperative with the disciplinary authorities, and that there was a delay in the

_____

[11] In his response to the State Bar's exceptions, Melnick argues that the mitigating factor of personal and emotional problems is "readily apparent here" and that he was dealing with physical issues that resulted in a four-day stay in the hospital in November 2020. There is no evidence or testimony in the record regarding the physical problems that led to the hospital stay, and a hospital stay in November 2020 occurred long after the conduct at issue in this matter.

proceedings given that the allegations at issue happened over five years ago. See ABA Standards 9.32 (b), (e), and (j). We disagree. The Special Master did not make any factual findings from which we could conclude that Melnick's willful and knowing actions lacked a selfish or dishonest motive or that there was delay attributable to the State Bar. Compare *In the Matter of Hamilton,* 315 Ga. 821, 830 (884 SE2d 887) (2023) (noting that lesser sanction was warranted in case where substantial delay in disciplinary proceedings was not attributable to respondent); *In the Matter of Suttle*, 288 Ga. 14, 16 (701 SE2d 154) (2010) (noting that delay in disciplinary proceedings that is not attributable to Bar is not properly considered in mitigation).[12] Additionally, the fact that the Bar had to file a motion

___

[12] While the State Bar asserts that Melnick was dilatory in responding to discovery, the record does not support the Bar's contention that there was delay attributable to Melnick's failure to timely respond to discovery. The record shows that the evidentiary hearing was held on the date originally scheduled and thus was not delayed as a result of Melnick's untimely responses to discovery. Additionally, in its response to Melnick's motion for review by the Review Board, the Bar attributes its own delay in filing the formal complaint to Bar Counsel's difficulty in communicating with Melnick as the Bar was trying to work with him to resolve the matter prior to filing a formal complaint. Compare Bar Rules 4-204.4 (a) (once State Disciplinary Board finds probable cause, it may direct Bar Counsel to file formal complaint within 30 days, unless

21

to compel Melnick's responses to discovery weighs against applying his cooperation with the State Bar as a mitigating factor.

With regard to aggravating factors, we agree that Melnick's substantial experience in the practice of law and his lack of remorse are properly considered in aggravation. Melnick's attempts to cast blame on his client and his characterization of any harm to her as "very minimal" reflect a lack of remorse.[13] See *In the Matter of Crowther*, 318 Ga. 277, 298 n.14 (897 SE2d 448) (2024) (noting that we may consider actions during the disciplinary process as aggravating factors). We also agree that Melnick's prior disciplinary history, which involved conduct similar to the conduct at issue here, is an aggravating factor, but we do not give the existence of those

---

the Board or its Chair grants an extension); 4-211 (1) ("Within 30 days after a finding of Probable Cause, the Office of the General Counsel shall file a formal complaint . . . ."). See also Bar Rule 4-211.1, "Dismissal after Formal Complaint" ("At any time after the State Disciplinary Board finds Probable Cause, the Office of the General Counsel may dismiss the proceeding with the consent of the Chair or Vice-Chair of the State Disciplinary Board or with the consent of any three members of the State Disciplinary Board.").

[13] We reject any suggestion that the failure to file a petition for voluntary discipline is evidence of a lack of remorse. See generally *Suttle*, 288 Ga. at 16 (recognizing "that an attorney's refusal to acknowledge the wrongful nature of his or her behavior should not automatically be considered a factor in aggravation of punishment").

offenses great weight given that the sanctions were imposed 12 to 15 years before the misconduct in this case and that there is no evidence of any disciplinary actions against Melnick for over a decade.[14] Nevertheless, the existence of three prior disciplinary sanctions authorizes the exercise of our discretion to impose a suspension or disbarment under Bar Rule 4-103.

Having carefully reviewed the record and the parties'

---

[14] We have previously found the existence of prior disciplinary offenses and the remoteness of such offenses, see ABA Standards 9.22 (a), 9.32 (m), applicable, without much discussion about how they are weighed. See, e.g., *In the Matter of Golub*, 313 Ga. 686, 693-695 (872 SE2d 699) (2022); *In the Matter of Hemmann*, 304 Ga. 632, 634-635 (820 SE2d 671) (2018); *In the Matter of Geary*, 281 Ga. 554, 555 (640 SE2d 253) (2007). Our cases also reflect instances in which the existence of a prior offense that was remote in time was not considered as an aggravating factor. See, e.g., *In the Matter of Davis*, 312 Ga. 808, 809-810 (865 SE2d 132) (2021) (noting that neither State Bar nor special master used prior disciplinary history as aggravating factor where the prior offenses were remote in time and different in kind from conduct at issue); *In the Matter of Jefferson*, 307 Ga. 50, 53 (834 SE2d 73) (2019) (noting that in recommending sanction, special master did not consider prior disciplinary offenses that were remote in time); *In the Matter of Levine*, 303 Ga. 284, 287, 290 (811 SE2d 349) (2018) (disbarring lawyer and noting that special master did not consider as aggravating factor prior disciplinary sanction imposed approximately four years before conduct at issue); *In the Matter of Jones*, 289 Ga. 833, 834 (716 SE2d 208) (2011) (in case involving no aggravating factors, noting that special master found remoteness of prior disciplinary offense as mitigating factor). In general, we believe that the Special Master properly considered the remoteness of Melnick's prior offenses as lessening the aggravating weight of those prior offenses.

contentions, we determine that a suspension is appropriate given that Melnick's misconduct was willful rather than negligent and harmed his client and the fact that he has received three prior disciplinary sanctions for similar conduct. See ABA Standards 4.42 (a) and 8.2, Bar Rule 4-103. We further determine that the mitigating factors do not outweigh the aggravating factors. Thus, based on the particular facts of this case and this Court's prior precedent in similar cases, we conclude that a six-month suspension is the appropriate sanction for Melnick's violations of Rules 1.3 and 1.4. See, e.g., *Sakas*, 301 Ga. at 50-51; *Elkins*, 284 Ga. at 670-671; *Ellison*, 280 Ga. at 303. See also *Hemmann*, 307 Ga. at 59.

Accordingly, it is hereby ordered that Jonathan R. Melnick is suspended from the practice of law in Georgia for six months.[15] The suspension based on this opinion will take effect as of the date this

---

[15] Although the State Bar asserts that Melnick has already completed a practice management assessment, citing Melnick's testimony that "I did also do the law practice management course with the State Bar," the record is not clear about when, if at all, Melnick participated in the State Bar's Law Practice Management Program. If he has not done so recently, we encourage him to take advantage of this program and to adopt any recommended measures for the administration of his law practice.

24

opinion is issued and will expire by its own terms six months later. After this passage of time, there is no need for Melnick to take any action either through the State Bar or through this Court to effectuate his return to the practice of law. However, Melnick is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Six-month suspension. All the Justices concur.*