**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S25Y1155

In the Matter of Clifford E. Hardwick, IV

Decided: May 19, 2026

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation of Special Master Charles David Jones at the request of Clifford E. Hardwick, IV (State Bar No. 325662), pursuant to Bar Rules 4-214, 4-215, and 4-216. The formal complaint upon which these disciplinary proceedings were based alleged that Hardwick, who has been a member of the State Bar since 1976, violated Rules 1.15(I)(a), 1.15(II)(a), 8.1(a), and 8.4(a)(4) of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102(d). The maximum penalty for a violation of each of these Rules is disbarment. Following an evidentiary hearing and a hearing on aggravating and mitigating circumstances—at which the State Bar presented evidence that Hardwick has been disciplined on five prior occasions—the Special Master determined that Hardwick violated the Rules with which he was charged and recommended that he be disbarred. The Review Board adopted the Special Master's findings of fact, conclusions of law, and recommendation of disbarment. After our careful review of the record, we agree that disbarment is the appropriate sanction in this case, particularly given that this is Hardwick's fifth disciplinary offense.

1. *Procedural History*

In November 2019, the State Bar filed a formal complaint charging Hardwick with violations of Rules 1.15(I)(a) (a lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds); 1.15(II)(a) (requiring every lawyer who practices law in Georgia and who receives money on behalf of a client or in any other fiduciary capacity to maintain a trust account and that all funds held by a lawyer for a client or in any other fiduciary capacity shall be deposited in and administered from a trust account); 8.1(a) (a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact); and 8.4(a)(4) (it is a violation of the GRPC for a lawyer to engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation). The State Bar alleged that, in 2016, Hardwick and Joseph Carswell—whom Hardwick previously represented in a criminal matter—used Hardwick's name and reputation as a former City Attorney for the City of Atlanta to lure 14 victims to send funds totaling $655,000 to Hardwick's personal and business bank accounts for what the victims were led to believe were legitimate investment opportunities. On February 14, 2020,[1] Hardwick responded to the formal complaint, stating that, at the time, he was unaware of Joseph Carswell's investment scheme and that Carswell informed him that the funds deposited into Hardwick's accounts were funds earned by Carswell for brokering certain transactions. Further, Hardwick denied all Rule violations. The parties then engaged in discovery, and, on October 27, 2021, the Special Master issued a Pretrial Order. On September 19, 2022, the Special Master held

---

[1] The parties agreed to extend the time period in which Hardwick was required to respond to the formal complaint.

an evidentiary hearing to determine whether Hardwick violated the Rules with which he was charged and, on April 16, 2024, the Special Master held a second hearing on aggravating and mitigating circumstances. On December 4, 2024, the Special Master issued his final report and recommendation.[2]

2. *Special Master's Reports and Recommendation*[3]

(a) *Factual Findings*

Based on the State Bar's formal complaint, Hardwick's answer, and the evidence at the hearings, the Special Master recounted the following. Hardwick and Carswell had an attorney-client relationship that began in 2013 in connection with Carswell being charged with felony exploitation of an elderly person and two counts of identity fraud. Carswell pleaded guilty and was sentenced to 15 years probation, which expressly prohibited Carswell from conducting any business with an elderly person. Hardwick maintained a relationship with Carswell during this probation period. In the course of that relationship, Hardwick, in exchange for compensation, allowed Carswell to use Hardwick's bank accounts as a depository for third-party funds. Specifically, in 2016, Hardwick received money from third parties wired into his bank accounts,[4] held the money in his bank accounts for a period of time, and then distributed the money to Carswell and others, either at the direction of Carswell or according to written escrow

---

[2] We express our concern that the formal complaint was filed against Hardwick in November 2019, the final hearing did not take place until April 2024, and the Special Master did not issue his final report until December 2024.

[3] The Special Master issued two reports. The first report addressed his factual findings and determinations as to the Rules violated. The second report addressed the appropriate sanction for Hardwick's misconduct.

[4] Hardwick's accounts were not IOLTA accounts.

agreements. Hardwick retained a 2% commission on the money wired from third parties into his bank accounts with respect to some of the transactions. The Special Master further recounted that, during the evidentiary hearing, Hardwick testified that he received money wired from third parties into his bank accounts either in a capacity as a "paymaster" under an "escrow agreement" or because he was providing Carswell an "accommodation service."

The Special Master then described the transactions that occurred related to this disciplinary matter, identifying a transaction involving an individual (the "individual transaction") and multiple transactions involving clients of an investment firm (the "firm transactions"). Regarding the individual transaction, an elderly woman authorized the transfer of $20,000 from her bank account to Hardwick's business account entitled "Clifford E. Hardwick IV D/B/A Clifford E. Hardwick IV ESQ." The woman transferred the money after being promised a "safe investment opportunity." On October 25, 2016, Hardwick received the $20,000 and began making numerous wire transfers out of the account to Carswell. By November 7, 2016, the balance in the account was $2,274.74. The woman received no investment returns nor was her $20,000 returned. Regarding the firm transactions, upon also being promised "safe investment opportunities," 13 clients of an investment firm authorized the transfer of funds from their respective bank accounts to a personal account held by Hardwick. The amount that each client sent ranged from $10,000 to $110,000 and totaled around $635,000. Between 2016 and 2017, Hardwick made several wire transfers from this personal account to Carswell and kept some funds as a purported "escrow fee." The clients received no investment returns and, despite demands, received none of their money back.

4

The Special Master also recounted that Hardwick testified that at the time he was allowing Carswell to use his bank accounts, he "had been dealing with [Carswell] professionally … [for] almost two years," and had "no real issues with [Carswell]." However, Hardwick simultaneously acknowledged that before the transactions in this disciplinary matter occurred, he was contacted by another group of "investors" who reported problems with transactions involving Carswell. Hardwick further acknowledged that he was aware that he was named in a State Bar Grievance filed by these investors because he was listed as the escrow agent for the transactions involved[5] and also was aware of Carswell's prior guilty plea to elder abuse, as Hardwick represented Carswell in this matter. The Special Master also noted that, during the evidentiary hearing, Hardwick "demonstrated some confusion" regarding the exact nature of the financial services he provided to Carswell. For example, Hardwick stated that he handled money pursuant to escrow agreements but did not put the money into an escrow account. Further, Hardwick testified that he was unsure whether he took a 2% commission with respect to the individual and firm transactions but later conceded that he did in fact take a 2% commission in connection with at least one of the transactions. However, despite Hardwick's contradictory statements and characterization of the financial services he provided to Carswell, the Special Master explained that Hardwick's admitted conduct of receiving the third-party funds into his accounts hid the actual nature of the fraudulent transactions. Further, the Special Master found that although Hardwick testified that he did not know anything about the sources of the funds he was receiving or why the funds were being sent to him, as Carswell's criminal defense attorney, Hardwick knew Carswell was not to

---

[5] This grievance filed by these investors was later dismissed.

have any contact or business dealings with elderly persons as a result of his guilty plea yet made no effort to determine the age of anyone involved in the transactions.

Additionally, the Special Master addressed the statements Hardwick made in connection with this disciplinary matter that the Special Master determined Hardwick knew to be false. The Special Master recounted that in January 2018 and May 2018, Hardwick sent letters to the State Bar in response to two grievances filed against him by the woman involved in the individual transaction and a representative of the investment firm. In these letters, Hardwick claimed that he had "absolutely no prior notice" of the victims' transactions and that he was "not a participant" in Carswell's investment scheme. However, at the time these statements were made, the evidence shows that Hardwick already received the victims' funds; disbursed the funds to Carswell; taken a 2% commission on at least one transaction; and received an email from the firm's representative inquiring about the firm's clients' funds. Moreover, after receiving the email from the firm's representative and before responding to the grievances, Hardwick emailed Carswell to inform Carswell that he received another email from one of the investors regarding a "botched transaction."

(b) *Rule Violations*

The Special Master concluded that Hardwick violated Rules 1.15(I)(a) by failing to hold the funds he received separate from his own funds and failing to keep the funds in an approved attorney trust account; 1.15(II)(a) by failing to deposit the funds he received into an attorney trust account and by failing to administer the funds from such an account; 8.1(a) by making knowingly false statements in the letters to the State Bar that he had "no knowledge" of the deposits made by the victims into his bank

6

accounts; and 8.4(a)(4) by "deceitful[ly]," "dishonest[ly]," and "illegal[ly]" renting out his bank accounts to Carswell for the receipt and transmission of other people's money.

(c) *ABA Standards*

After concluding that Hardwick violated the provisions of the GRPC with which he was charged, the Special Master applied the framework set out in the ABA Standards, which provide that, when imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0. In assessing the duty violated, the Special Master determined that Hardwick violated his ethical duties to the legal system, his ethical duties owed as a professional, and his duties to third parties by failing to properly administer funds. In assessing Hardwick's mental state, the Special Master determined that Hardwick knowingly made false statements to the disciplinary authorities with the intent to mislead for his own benefit and was a knowing participant in Carswell's fraudulent scheme. In assessing the injuries caused, the Special Master determined that Hardwick's conduct injured the reputation of the legal profession and injured the victims who sent him money.

Turning to the existence of aggravating and mitigating factors, the Special Master determined that several of the aggravating factors listed in ABA Standard 9.22 applied. The Special Master determined that Hardwick had prior disciplinary offenses—as Hardwick had twice been suspended by this Court and had received two formal letters of admonition[6]—and that Hardwick

---

[6] Although not considered by the Special Master in aggravation, the

7

committed multiple offenses because his conduct violated several provisions of the GRPC. See ABA Standard 9.22(a) and (d). The Special Master also determined that Hardwick had a dishonest or selfish motive because he allowed Carswell to use his bank account so that Hardwick could make money on the transactions; refused to acknowledge the wrongful nature of his conduct as he testified at the hearings that he was a victim of Carswell's scheme; and showed an indifference to making restitution, as he did not even offer to use his "own ill-gotten gains" from the transactions as partial restitution. See ABA Standard 9.22(b), (g), (j). Additionally, the Special Master determined in aggravation that the woman involved in the individual transaction was a vulnerable victim due to her age and that Hardwick had substantial experience in the practice of law. See ABA Standard 9.22(h) and (i). The Special Master then determined that only two mitigating factors applied: evidence of good character and remoteness of prior offenses. See ABA Standard 9.32(g) and (m). Further, the Special Master explained that "the aggravating factors significantly outweigh the mitigating factors in this matter."

(d) *Recommended Discipline*

In assessing the appropriate discipline, the Special Master concluded that disbarment is the appropriate penalty for Hardwick's Rule violations.

3. *Review Board's Report and Recommendation*

At Hardwick's request, the Review Board reviewed the Special Master's report and recommendation. The Review Board

---

transcript from the hearing on aggravating and mitigating circumstances shows that Hardwick also admitted that in 2006, he received an interim suspension for failing to respond to a grievance filed against him.

adopted the Special Master's findings of fact and conclusions of law, and agreed that disbarment was the appropriate sanction.

### 4. *Hardwick's Exceptions*

Hardwick filed exceptions in this Court to the Review Board's report and recommendation. In his exceptions, he argues that the Special Master erred in concluding that he violated Rule 8.1(a) by making knowingly false statements; that his alleged conduct does not fall within the scope of Rule 8.4(a)(4) because it was not professional in nature nor did he act dishonestly; that he was not engaged in the practice of law when he received and disbursed the funds at issue and therefore cannot have violated Rules 1.15(I)(a) and 1.15(II)(a); and that the recommendation of disbarment is inappropriately severe. In response, the State Bar argues that the Special Master and Review Board correctly determined that Hardwick violated the Rules with which he was charged and that disbarment is appropriate.

### 5. *Analysis*

Regarding Hardwick's Rule 8.1(a) violation, Hardwick asserts that he did not knowingly make any false statements in connection with this disciplinary matter and that, therefore, the Special Master erred in determining that he violated this Rule. However, the Special Master's finding that Hardwick made false statements in response to the two grievances filed against him when he stated that he had no knowledge of the transactions at issue is supported by the record, given that Hardwick received and disbursed the funds in these matters and contacted Carswell about receiving an email regarding another "botched transaction" before making these statements to the State Bar. In his exceptions, Hardwick asserts that his responses were misconstrued and that by stating he had no knowledge of the transactions at

9

issue, he was referring to the references in the grievances to the investment opportunities and an escrow agreement. However, the Special Master rejected this same argument and because "the special master is in the best position to determine the witnesses' credibility," we "generally defer[] to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous." *In the Matter of Tuggle*, 317 Ga. 255, 258 (2023). We therefore reject Hardwick's argument that the Special Master erred by concluding that he violated Rule 8.1(a).

Given Hardwick's violations of Rule 8.1(a) and the several applicable aggravating factors—including that this is Hardwick's sixth disciplinary offense—we agree with the Special Master and the Review Board that disbarment is appropriate. As an initial matter, a Rule 8.1(a) violation is a serious offense, and a single violation of this Rule carries a maximum sanction of disbarment. We have explained that "this Court has little tolerance for a lawyer who lies during disciplinary proceedings or engages in conduct involving dishonesty, fraud, deceit or misrepresentation." *In the Matter of Friedman*, 270 Ga. 5, 6 (1998). See also *In the Matter of Shehane*, 276 Ga. 168, 169–70 (2003) ("[m]aking deliberate statements of falsehood … to the investigative process established by this Court to aid in the regulation of the practice of law in Georgia is not tolerated"). Moreover, Hardwick's false statements to the State Bar in this matter is just one more example of his repeated disregard for the Bar Rules and the disciplinary process, as he has engaged in a continuous pattern of Rule violations spanning over thirty years. The record shows that in 1994, Hardwick received a Formal Letter of Admonition for ignoring the State Bar's request to respond to a client grievance filed against him. In 2006, Hardwick received an interim suspension from the practice of law for failing to respond to a grievance filed against him

10

by another client. In 2008, Hardwick received a second Formal Letter of Admonition for presenting himself to a different client as a licensed attorney in good standing during his interim suspension. In 2010, Hardwick received a six-month suspension for violating several Rules by abandoning his clients and falsely stating during the disciplinary process that the litigation was resolved by settlement. See *In the Matter of Hardwick*, 288 Ga. 60 (2010). And in 2015, Hardwick received a 90-day suspension for making a false statement to his client regarding the status of a motion. See *In the Matter of Hardwick*, 297 Ga. 808 (2015). Additionally, we note that in both the 2010 and 2015 matters, Hardwick's conduct violated Rule 8.4(a)(4), which "is among the most serious violations with which a lawyer can be charged," see *In the Matter of West*, 300 Ga. 777, 778 (2017), and, like in the current case, his misconduct in these matters involved making false statements. Given Hardwick's extensive disciplinary history, we conclude that Rule 4-103 applies, under which "[a] finding of a third or subsequent disciplinary infraction under these Rules shall, in and of itself, constitute discretionary grounds for suspension or disbarment." See *In the Matter of Melnick*, 319 Ga. 730, 740 (2024) (applying Rule 4-103 where attorney "received three prior disciplinary sanctions for similar conduct."). Accordingly, given Hardwick's Rule 8.1(a) violations and the applicability of Rule 4-103, we conclude that disbarment is the only appropriate sanction and that this sanction has been imposed in similar cases. See *In the Matter of Eddings*, 314 Ga. 409, 417–18 (2022) (disbarring attorney who, among other things, made false statements in connection with the disciplinary process in violation of Rule 8.1(a) and had two prior disciplinary offenses); *In the Matter of Nelson*, 293 Ga. 578, 578–79 (2013) (disbarring attorney for violating Rule 8.1(a), among others, where attorney made false statements to the State Bar and had two prior disciplinary offenses, acted in bad

faith, refused to acknowledge the wrongful nature of his conduct, and had substantial experience in the practice of law). And because we conclude that disbarment is the appropriate sanction for Hardwick's violations of Rule 8.1(a), we pretermit consideration of any additional issues regarding Hardwick's violations of Rules 1.15(I)(a), 1.15(II)(a), and 8.4(a)(4). See *In the Matter of Morris*, 302 Ga. 862, 864 n.3 (2018) (declining to reach question of whether attorney violated Rule 8.4(a)(3) because attorney clearly violated other Rules for which disbarment was appropriate).[7]

Accordingly, it is hereby ordered that the name of Clifford E. Hardwick, IV be removed from the rolls of persons authorized to practice law in the State of Georgia. Hardwick is reminded of his duties under Bar Rule 4-219(b).

*Disbarred. All the Justices concur.*

---

[7] We note that because we have only addressed Hardwick's Rule 8.1 violation, we have not relied on ABA Standard 9.22(d) (multiple offenses) in aggravation.